WILLIAM H. McINTIRE, Appellant, v. MARSH W. BAILEY, Guardian, Appellee.

**Insane persons:** REMOVAL OF GUARDIANSHIP PROCEEDINGS. An insane 1 person cannot of his own volition change his domicile, and where a guardian has been legally appointed in one county the court will not order a transfer of the proceedings to another county in which the ward has no property, especially where there is objection by the guardian and relatives.

**Guardian and ward:** REMOVAL OF GUARDIAN: GROUNDS. The guardian 2 of an insane person who fails to make the annual report required by law; loans his ward's money without authority of court and in his own name; commingles the same with funds of his own and others; and toward whom the guardian has an xtreme feeling of hostility, should be required by the court to account and should be removed from office although bad faith is not shown, his bondsmen responsible, and it is the custom in that county to make loans without authority of court.

**Removal of guardian:** APPOINTMENT OF SUCCESSOR. The Supreme 3 Court upon adjudging on appeal that a guardian should be removed will not appoint a successor, but will remand the matter to the district court for proper order of removal and appointment.

*Appeal from Washington District Court.*— HON. W. G. CLEMENTS, Judge.

THURSDAY, FEBRUARY 14, 1907.

THIS is an action for the removal of defendant as guardian of plaintiff, who is a person of unsound mind; for the appointment of another as guardian for him; and for the transfer of the guardianship proceedings to the district court of Jefferson county. Plaintiff's petition was denied, and he appeals.— *Affirmed* in part. *Reversed* in part.

*Leggett & McKenney,* for appellant.

*Wilson & Wilson,* for appellee.

Per Curiam.— J. A. McIntire, a resident of Washington county, died in the year 1901, leaving as his surviving heirs, Rebecca Snyder and William H. McIntire. These heirs, who are children of J. A. McIntyre, were also residents of Washington county and William H. was, and from childhood had been, an imbecile, living with his father and sister. On September 20, 1901, Rebecca Snyder was by the district court of Washington county appointed guardian of her brother William, and continued to act as such until September 27, 1902, when she resigned and the probate court on its own motion appointed Marsh W. Bailey, a resident of Washington county, in her place and stead. Bailey qualified September 30, 1902. Shortly after the death of J. A. McIntire, William, without the consent of his guardian, went to Jefferson county and took up his residence with one Kendall. Following the appointment of Bailey there was litigation with the former guardian, Mrs. Snyder, over her final report which resulted in her paying over to Bailey on November 4, 1903, the sum of $131.42. Litigation was also had over the real estate owned by J. A. McIntire which was settled by a decree of court rendered in November, 1903, and as a result thereof Bailey, as guardian, received $6,279.08. Defendant, as guardian, filed an inventory on November 28, 1903, but, as this document is not before us, we are unable to state what it shows,, save that it does not correspond with the only report filed by him on January 7, 1905, which report was filed in response to the petition to remove, etc. As no reports were filed by the guardian, the ward, through his attorneys, on January 7, 1905, filed his petition for the removal of Bailey the guardian, for the transfer of the proceedings to Jefferson county, etc., based upon the guardian's failure to file reports, to properly invest the funds coming

into his hands, and other matters not necessary to be stated. The ward also stated that he had removed to Jefferson county, which place he intended to make his home, and further alleged that his guardian was distasteful to him, and that he had asked him to resign. In response to this the guardian filed an answer accompanied by a report in which answer he gave certain excuses for not filing reports. Rebecca Snyder also appeared and filed objections to the transfer of guardianship. Thereafter plaintiff filed objections to the guardian's report and an amendment to his petition for removal, in which he alleged that the guardian had mixed the funds coming into his hands with others, had loaned a part or all thereof without authority of court in his own name, and otherwise converted the assets of the estate. He further charged that the guardian kept no accounts, had failed to account for interest on the funds, and had failed to invest the funds as by statute provided. Most of these statements were denied by the guardian in an answer filed by him. Upon these issues the matter was tried to the court, resulting in an order denying the petition and overruling the objections to the report.

I. We shall first consider the matter of transfer to Jefferson county. It is conceded that, at the time of the original appointment, and also at the time of the appointment of

1. Insane persons: removal of guardianship proceedings.

Bailey, the ward was domiciled in Washington county, and, at the time of these appointments, the district court of Washington county, sitting as a court of probate, had jurisdiction over the ward and his property. As the ward was *non compos,* he could not, thereafter, of his own volition change his domicile, and his removal to Jefferson county, with intent on his own part to remain there, did not, under the circumstances disclosed, give the district court of Jefferson county jurisdiction of either his person or property. There seems to be no statute authorizing the transfer of such proceedings from one county to another in the same State, and, in the absence of a legal

and valid change of domicile, there is no inherent power in the court to make such transfer even if such power be conceded to exist in any case. That an insane ward cannot change his domicile is fundamental. See *Jenkins v. Clark,* 71 Iowa, 522. There is no property in Jefferson county which would give the district court of that county jurisdiction, and we should not order the transfer of property there in order to confer jurisdiction, especially where his sister and guardian are both objecting thereto. The trial court was right in denying the transfer.

II. Coming now to the petition for removal, we find, from the guardian's own testimony, that he has mingled his ward's funds with his own in such a manner that it is impos-

2. GUARDIAN AND WARD: removal of guardian; grounds.

sible for him to state as to how they are invested; he has invested his ward's funds with others in notes, mortgages, paving certificates, and other evidences of value, without authority of court, in such a manner that he cannot tell which, if any, belong to his ward; he has invested practically all the funds in his own name, but cannot tell in what way the trust funds are invested; he is unable to tell the amount or present value of the securities held by him, although he says he believes they are worth the amount he put into them; he presents nothing as representing the investments of his ward's funds; when collecting interest he did not know what part belonged to his ward, and he has made no reports save as above indicated. Moreover he had incurred the hostility of his ward, and the relations between them are strained.

By section 3203 of the Code it is made the duty of all guardians to report at least once each year showing all moneys or property in their possession, with all interest which may have accrued on money loaned belonging to their wards, and, for failure to do so, by section 3024 a penalty is imposed, and, in addition thereto, this section provides that such failure shall be ground for removal. By section 3200 it is made the duty of guardians to loan money and

manage the affairs of their wards under the orders of the court or a judge thereof. Without such authority a guardian has no authority to loan his ward's money. *Bates v. Dunham,* 58 Iowa, 308; *Easton v. Somerville,* 111 Iowa, 164, and cases cited. In the absence of statute it is the duty of a guardian to keep his ward's money and property separate from his own; to keep an account thereof; to make investments, not in his own name, but as guardian; and to keep those investments separate from his own. These duties are so well understood that we need not cite authorities, in their support.

It is conceded and the district court found that the guardian did not make the reports required by law; that he did not have authority from the court to make any loans of his ward's funds; that he mixed these funds with his own and with those belonging to others, and made all loans and investments in his own name. But it is argued, and the district court so found, that, as it was not the practice in Washington county for guardians to receive authority of the court to make loans and investments, and as the guardian was acting in good faith, he should not be removed, as his bond was sufficient to make good all losses to the ward's estate. If there be such practice as that stated in the courts of Washington county, it is high time that such practice be discontinued, and there is no more effective method for doing so than to remove all court appointees who persist in following the practice. The statute is plain upon this subject, and should not be disregarded. The provision for making annual reports is, or should be, mandatory, although any reasonable explanation for failure to comply might be accepted, provided the delay was not unreasonable. In considering these matters it is not a question of motive or intent. The statute and rules referred to are for the protection of the ward, and the good intentions of the guardian are no excuse for his failure to observe them. In this case the guardian was not able to place his hand upon any particular invest-

ment and to say, " This represents my ward's money."  He
had so mingled the funds received from his ward's estate
with others and with his own, and had so invested the entire
amount, that he could not segregate the investments in any
way.   He kept no separate account of his ward's estate and
handled all the money as if it were his own.   This amounted
to a conversion of the funds, and he and his bondsmen be-
came liable for the entire amount received by him with in-
terest.   In such circumstances the guardian should be called
to account, and removed, not only for the protection of his
ward's estate, but of the sureties on his bond as well.  It is
not enough to say that his bond is good, and that the estate
has not yet suffered.   It is the duty of the court to call its
officers to account, and, when it has knowledge of malad-
ministration, to protect the sureties on the bond given by
the guardian.   If with full knowledge of the situation it
continues the guardianship, it might well be claimed that the
sureties were thereafter released.   Ordinarily the matter of
the removal of a guardian rests in the sound discretion of the
court appointing him, but this is a legal discretion which it
is the duty of appellate tribunals to correct where there has
been an abuse thereof.

We see nothing to indicate that the guardian has acted
with bad motives or dishonest intent.   His lapses have been
due perhaps to want of knowledge of his duties, or to a cus-
tom prevailing in his county, or to forgetfulness, but, what-
ever the source, it is manifest that such procedure almost
always leads to disaster and loss.   It may not have done so
here, but the law is not made for particular instances.   The
statutes and rules of law prescribe a course which all must
follow.   This practice has been adopted after long experi-
ence for the protection of estates, and it must be followed.
At the time of the hearing the guardian was unable to state
just where the money of his ward was invested, and he pre-
sented no securities which he claimed belonged to his ward,
and in his report named none.   The effect of the whole mat-

ter is that the guardian has either loaned to himself without authority of court all of his ward's money, or has converted the entire amount to his own use.

Moreover, there is a feeling of hostility between the guardian and his ward and such a situation exists that, for the good of all concerned, the guardian should be removed and another appointed in his stead. We can hardly imagine a stronger case for the removal of a guardian short of one where there has been a deliberate attempt to cheat and defraud the ward. That element is not present here, for the guardian is a man of character and standing, but the law, and the interests of all concerned, seem to demand the removal. He should also be compelled to immediately file his final report and make settlement with his successor with the approval of the court. If authority be needed for our conclusions it will be found in *Crawford v. Crawford,* 91 Iowa, 744; *In re Mansfield Estate,* 206 Pa. 64 (55 Atl. 764); *George v. Parker,* 16 Iowa, 630; *In re Pierson's Ex'rs,* 13 Iowa, 449.

III. We are asked to appoint one Marcy, a resident of Jefferson county, as successor to Bailey. This we shall not do, not because Marcy is not a proper person to be appointed, but for the reason that the appointment of whomsoever it may be should come from the district court. The case will be remanded to the district court for a proper order of removal, and for the appointment of a successor to defendant Bailey as guardian.

3. REMOVAL OF GUARDIAN: appointment of successor.

The result of the whole matter is that the order denying the transfer to Jefferson county is affirmed, and the decree is otherwise reversed and remanded for proceedings in harmony with this opinion.

*Affirmed* in part, and *reversed* in part.