W. J. MURRAY, Superintendent of Banking, Appellee, v. NORTH LIBERTY SAVINGS BANK et al., Appellants.

CLAIM OF FIRST NATIONAL BANK OF NORWAY.

RECEIVERS:  Claims—Presumption in re Trust Funds.  A rebuttable presumption prevails against the receiver of an insolvent that a trust fund lawfully in the possession of the insolvent was preserved by the insolvent and delivered by him to the receiver.  Evidence held insufficient to overcome the presumption.

*Appeal from Johnson District Court.*—RALPH OTTO, Judge.

OCTOBER 23, 1923.

APPEAL from an order by the court allowing the claim of the First National Bank of Norway, Iowa, against the receiver of the North Liberty Savings Bank as a preferred claim. The facts are stated in the opinion.—*Affirmed.*

*Wilson & Evans,* for appellants.

*Dutcher & McClain,* for appellee.

STEVENS, J.—The North Liberty Savings Bank of North Liberty, Iowa, was closed on August 20, 1921, by order of the state banking department, and on August 31st, H. D. Evans was appointed receiver, upon the application of W. J. Murray, superintendent of banking, for the purpose of preserving its assets and winding up its affairs. Notes of the savings bank were frequently discounted to the First National Bank of Norway, Iowa. It was the custom for the national bank, either upon its own motion or at the request of the savings bank, to forward

the discounted notes to the latter for collection and remittance. Remittance was generally made by draft or cashier's check, but occasionally it was made by a certificate of deposit, which, according to the testimony of the cashier of the receiving bank, was forwarded to its correspondent for collection and deposit, the same as drafts or cashier's checks. One of the notes so held by the national bank was for $2,000, signed by A. W. Kadera. This note was forwarded by the cashier of the national bank to the savings bank some time prior to February 11, 1921, on which date it was paid by Kadera. On the same day, the cashier of the savings bank issued a certificate of deposit for $2,014.66, the amount of the note payable to the national bank, due in six months, with interest at 4½ per cent. This certificate of deposit he placed in the files of the bank, where it remained until some time after August 10, 1921, when the affairs of the bank were examined by a representative of the state banking department. The national bank in due time filed a claim with the receiver for the amount of the note, and asked that it be established and ordered paid as a preferred claim. A trial in the court below resulted in the entry of an order by the court, as prayed. From this order, the receiver appeals.

The bank claims a right to have its claim established and paid as a preferred claim, upon the theory that the relation between the two banks, so far as this transaction is concerned, was that of principal and agent, and that, immediately upon the payment. of the note to the savings bank, as agent, a trust arose in favor of the national bank, as principal, for the amount of the note. If nothing more appeared in the record, this would undoubtedly be true. *Jones v. Chesebrough*, 105 Iowa 303; *Bradley v. Chesebrough*, 111 Iowa 126; *Hanson v. Roush*, 139 Iowa 58; *Page County v. Rose*, 130 Iowa 296; *Messenger v. Carroll Tr. & Sav. Bank*, 193 Iowa 608.

This controversy does not, however, end with the admission of the matters stated. The receiver claims that it was the custom of the savings bank to issue certificates of deposit to the national bank for sums collected by the savings bank upon notes sent to it by the national bank for collection, and of the national bank to permit the same to remain on deposit therein until required by it, and that, because of this custom, the simple rela-

tion of debtor and creditor was created, out of which no trust arose.

The further contention is made by appellant that the certificate of deposit issued by the savings bank was delivered to the president or vice president of the national bank, some time between the 10th and 20th of August, 1921, and retained by the bank as such, and that thereby the deposit of the proceeds of the note in the savings bank and the issuance of a certificate of deposit therefor were fully ratified and confirmed by appellee, and that it is now estopped from claiming that the money was held by the bank in trust and from having a preference established. Appellant also contends that the money paid to the bank by Kadera was dissipated and lost long before August 31st, and that no part of it ever came into the hands of the receiver, to augment or increase the assets of the bank. We will dispose of these contentions of appellant's in the order stated.

I.   It is conceded by appellee that, if the certificate of deposit was issued by the savings bank upon the authority and with the knowledge of the officers of appellee, the relation between the two banks became that of creditor and debtor, and not that of trustee and *cestui que trust*. The evidence does not establish a custom of dealing between the banks from which the inference could properly be drawn that the savings bank was authorized to issue the certificate of deposit and to retain the same in its own possession, or that such was the general method of doing business between them. On the contrary, under the facts shown, it was the duty of the savings bank to promptly remit the proceeds of the note to appellee. It appears that certificates of deposit were issued by the savings bank in a few instances, but they were forwarded to appellee, where they were treated the same as drafts or cashier's checks, except that, by special arrangement upon a few occasions, the money was left on deposit for a time in the savings bank.

The contention that appellee subsequently accepted the certificate and ratified the deposit evidenced thereby presents a more difficult question. All parties concede that the certificate was retained by the savings bank until some time after August 10, 1921, and that it later turned up in the possession of appellee. Lehnen, the cashier of the savings bank, testified that he deliv-

ered it to the president of appellee bank in the presence of its vice president, some time between the 10th and 20th of August. Both of these officers emphatically deny that they ever knew of the existence of the certificate until after the receiver took charge of the bank, and say that, instead of delivering the certificate to the president of the bank, as claimed by him, Lehnen informed them on August 10th that he expected to get the deal (meaning the collection of the note) closed up in a short time. Doebel, the cashier of appellee bank, testified that the certificate was turned over to him by the bank examiner or the receiver some time after August 31st, and that the reason he accepted it was that he had no other evidence of the transaction with the savings bank than a copy of the note; that he had no intention or thought of ratifying the deposit, or that the acceptance thereof would in any way change or alter the legal status of the claim or the relation of the two banks. The certificate was tendered to the receiver at the time the claim was offered for filing. The testimony of Lehnen and Doebel is in direct conflict as to whether the officers of appellee knew, prior to August 20th, that the note had been paid. Lehnen testified that he so informed Doebel; and Doebel, that Lehnen always represented to him that the note had not been paid. The receiver and bank examiner each denied that they delivered the certificate of deposit to Doebel. Their denial is based, however, largely upon the fact that they had no receipt therefor. According to the testimony of the officers of appellee bank, they first learned of the insolvent condition of the savings bank on August 19th or 20th. They obtained the information from the bank examiner. Both the president and the vice president of appellee admit that they were at the savings bank on August 10th, but deny that they were there after that date. The bank examiner made a record of the certificate on August 9th or 10th, but he testified that it was not among the papers of the bank when it was closed, on August 20th. We shall not undertake to harmonize the testimony of the witnesses, as this would be impossible. A careful and critical reading of the record satisfies us that the preponderance of the testimony sustains the conclusion of the trial court on this point. It is possible that the certificate was turned over to Doebel with other papers. The testimony of Lehnen is squarely contradicted by both the presi-

dent and the vice president of appellee bank, and inferentially by the testimony of Doebel. Doebel is also contradicted inferentially by. Lehnen and by the receiver and the bank examiner; but their testimony is based largely upon the method of handling the affairs of the insolvent bank and taking receipts for papers turned over to third parties. Doebel is an experienced banker, and the probabilities are that he received the certificate of deposit for the reasons stated by him, and not with the intention of ratifying the deposit, as urged by appellant. He knew on August 20th that the savings bank was insolvent, and that it had been or would be immediately taken over by the banking department.

II.   Before the appellee would be entitled to have its claim established and paid as a preferred claim, it was incumbent upon it to prove, in addition to such facts as would establish a constructive trust, that the trust funds, or some part thereof, came into the hands of the receiver, so as to augment the assets of the bank in his hands, and that same may be withdrawn without impairing the rights of general creditors.   *Jones v. Chesebrough*, supra; *Bradley v. Chesebrough*, supra; *Messenger v. Carroll Tr. & Sav. Bank*, supra.   This may be proved by facts, or it may appear by presumption.   The trust fund came lawfully into the possession of the savings bank as the agent of appellee, and it will be presumed that the fund was retained in its custody and that it was turned over to the receiver, unless the contrary is shown.   *Jones v. Chesebrough*, supra; *Bradley v. Chesebrough*, supra; *Messenger v. Carroll Tr. & Sav. Bank*, supra.   Appellant had the burden of overcoming this presumption.   This he could do by showing a dissipation of the trust fund before the receiver took charge of the bank.   The proof, however, shows nothing of the condition of the bank at the time the collection was made or thereafter, except that its assets were about $412,000 at the time the receiver took possession thereof, and that it was indebted on overdrafts for about $14,000.   The assets of the bank also included about $19,000 in other banks, but this was offset by indebtedness due the banks having the same on deposit.   Lehnen testified that the savings bank had cash on hand at all times after the note was paid, in excess of the amount claimed.   About $2,800 was turned over to the receiver by the bank.   The liabil-

ities of the bank, except as stated above, are not disclosed. We cannot say that the proof offered is sufficient to overcome the presumption in favor of appellee that the trust fund was turned over to the receiver. The case differs in this respect from *Jones v. Chesebrough,* supra, *Bradley v. Chesebrough,* and other cases cited supra. The law is well settled in this state as to all points argued by counsel, and further discussion thereof is unnecessary.

We are satisfied with the conclusion of the court below, and it is, accordingly,—*Affirmed.*

PRESTON, C. J., WEAVER and DE GRAFF, JJ., concur.