IN RE RECEIVERSHIP AMERICAN SAVINGS BANK OF MARENGO.

R. G. POPHAM, Intervener, Appellee, v. L. A. ANDREW, State Superintendent of Banking, Appellant.

No. 40010.

June 23, 1930.

*Hatter & Harned* and *John Fletcher,* Attorney-general, for appellant.

*Wallace & Claypool,* for appellee.

Kindig, J.—There is presented here for consideration the question as to whether the intervener-appellee, R. G. Popham, "treasurer of the permanent fund of the Iowa Annual Confer-

ence of the Methodist Episcopal Church,'' has properly identified and traced certain trust funds so that they may be recovered from the defendant-appellant, L. A. Andrew, state superintendent of banking, ''as receiver of the American Savings Bank of Marengo.'' Convenience suggests that hereinafter the appellee should be referred to as the claimant, and the appellant as the receiver. The claimant contends that such identification and tracing may be accomplished through a presumption that the trust funds are not only in the cash remaining in the Marengo Bank at the time it closed, but also in the bills receivable and certain accounts left in a correspondent bank on that occasion. For a better understanding of the proposition, a statement of the facts is essential.

Until November 20, 1928, the American Savings Bank had operated a general banking business at Marengo for many years. Claimant, who is a judge of the district court, acted as treasurer ''for the permanent fund of the Iowa Annual Conference of the Methodist Episcopal Church.'' This fund was for the support of certain ministers and their dependents. According to the record, the principal of the fund was to be kept intact, and the income used for the beneficiaries aforesaid. As treasurer, the claimant, on November 10, 1928, had on deposit with the American Savings Bank aforesaid $13,056.33. Additions thereto were made, so that, on November 12th thereafter, the amount of the deposit was $13,499.85. Later, on November 14th, the deposit had grown to $14,671.66.

Because there were rumors and general talk regarding a consolidation between said American Savings Bank and another institution in Marengo, known as the People's Savings Bank, claimant became concerned about the safety of the church fund, and asked the depository bank's officials for a trust agreement. While testifying upon this subject, claimant said:

''Well, on the 10th. [of November, 1928], I went into the bank [American Savings Bank], and Mr. Denzler [the cashier of the American Savings Bank] told me that they were talking of a merger between the American Savings Bank and the People's Savings Bank of Marengo, and I told him [the cashier], if that were true, that I wanted to take the funds that I had [the

church funds] in the bank out of the bank, or I wanted them put into liquid assets. Now, that is the sum and substance of what was said there at that time.

"Q. Now, on the 15th of November, 1928, did you have a conversation with Charles Denzler, or C. I. Denzler [the cashier aforesaid], prior to the time that he executed Exhibit B [a letter concerning the trust]? A. I did. Q. You may tell the court the substance of that conversation. A. Well, I told him [the cashier, Denzler], that, if the bank wouldn't turn over these funds and hold them in trust for me, that I was going to draw them out. Denzler told me [in reply to that demand] that he would; that they would do that; that they would agree to take these and put them into a trust fund, and hold them subject to my further orders in regard to them."

Continuing at this juncture, the claimant then testified that there was prepared by the bank and handed to him a letter, to the following effect:

"Marengo, Iowa, November 15th, 1928
"R. G. Popham, Treasurer of the
Permanent Fund of the Iowa Annual
Conference of the Methodist
Episcopal Church,
Marengo, Iowa.
"Dear Judge:

"Confirming my conversation with you held at various dates past and including Saturday, November 10th, 1928, will say that the American Savings Bank accepts the Trusteeship of yourself as Treasurer above named and agrees to hold all funds left by you as such Treasurer with it not as an ordinary deposit but as Trustee and agree that we will return to you in kind all cash or its equivalent left with us.

"I have neglected to write this letter until this morning but agree that it shall apply to all funds which you had deposited with us prior to and on Saturday, November 10th, 1928, and all deposits made after the date of November 10th, 1928. And this condition will continue until further orders.

"Very truly,
"[Signed] C. I. Denzler,
"Cashier."

Concerning the claimant's action and conduct with regard to said letter, the record discloses the following interrogatories and answers:

"Q. Did you [the claimant] act and rely upon your conversation that you had with C. I. Denzler [the cashier] and the receiving of Exhibit B [the letter above set forth]? A. I did. Q. What did you then do? A. Well, I told him [the cashier] that, if they would accept this trust, that I would draw the funds out and put them into a trust fund, and in accordance with that agreement, I drew Exhibit A."

Said Exhibit A was a check drawn by claimant upon the American Savings Bank under date of November 15, 1928, for $14,727.36. That was $100 less than the entire funds in the church account. Apparently by oversight, an error appeared in the amount, but the parties stipulate that the court is to consider the check included the full sum of the deposit. Under the check, the American Savings Bank was the payee. Thus the check was delivered to and accepted by the bank, and a new account was then opened in the institution on said last-named date. The new account was in the name of "American Savings Bank, trustee, in trust for R. G. Popham, Treasurer of the Permanent Fund of the Iowa Annual Conference of the Methodist Episcopal Church." In completion of the transaction, the American Savings Bank marked the check "paid." Thereafter, additional deposits were made into the new trust fund by claimant, as follows: $290.74 and $34, respectively, on November 17, 1928, and November 19th of that year. So, on November 19, 1928, the total deposit in the trust fund was $15,152.10. Upon that date, the American Savings Bank closed its doors because of insolvency, and on November 20th thereafter, the receiver was appointed.

It appears that, at the time the bank closed, on November 19, 1928, there was cash in its vaults amounting to $6,742.91, which was turned over to the receiver. At that time there was a credit deposit in a correspondent bank to the amount of $8,846.41. Afterwards, the money equivalent of said credit deposit was taken from the correspondent bank and held by the receiver. When the American Savings Bank closed, it had bills receivable amounting to approximately $606,880.89. Among

other things, the district court found "that there came into the hands of said receiver cash assets of [the] American Savings Bank in the amount of $23,330.09," and accordingly claimant's demand was allowed as a preferred claim, in the full sum of $15,152.10. Hence, the receiver was ordered to pay said claim in full, as preferred, together with six per cent interest from the date of the decree. Judgment was entered accordingly. Parenthetically it is noted that the cash in the vaults of the American Savings Bank at the time of closing was only $6,742.91. Included within the funds from which the district court found the receiver could pay the claimant's demand were not only the balance left in the vaults of the American Savings Bank when it closed, but also the sum in the correspondent banks, and other items. Because of this, the receiver contends that the district court was in error. The receiver's theory is that the funds remaining in the vaults of the American Savings Bank alone can be used to pay the obligation. If that resource is not sufficient to satisfy the demand in full, then payment thereof must be made *pro tanto*. Furthermore, the receiver maintains that there are other trusts of a similar nature which must partake ratably in the funds available therefor.

On the other hand, the claimant argues that the judgment and decree of the district court is correct because the trust was express, and, under the terms thereof, the American Savings Bank agreed to place the church deposit in liquid assets, and make return thereof to claimant in cash, or its equivalent. Therefore, claimant says the presumption that the trust funds were in the cash left in the bank when it closed applies equally, under the trust agreement, to the bills receivable and proceeds in the correspondent bank. Such are the contentions of the parties. Before discussing the precise issues involved, it will be helpful to recognize: First, that the claimant did not ask of, or obtain from, the American Savings Bank collateral security for the church funds; and, second, that the claimant did not expressly, through the aforesaid agreement, obtain a lien in the nature of a mortgage upon the entire funds of the American Savings Bank to secure the church funds. Claimant demanded and obtained a trust relationship between the bank and the church funds, wherein the bank was the trustee and the church the beneficiary. In his pleadings, claimant attempts to obtain relief on the theory of

said trust relationship, and none other. Upon that basis the trial was had.

I. Wherefore, claimant's remedy in this proceeding is predicated upon the fact that the closed bank holds the church money "in trust."

It is conceded by the receiver that the trust was established. Ownership of the trust funds, under the doctrine relied upon by claimant, remains in the church, and the relationship of debtor and creditor between the bank and the church did not arise through the trust relationship. *Andrew v. State Bank of New Hampton,* 205 Iowa 1064; *Andrew v. Farmers Sav. Bank of Goldfield,* 207 Iowa 394. So; in effect, the claimant is endeavoring to obtain from the receiver the trust property owned by the church. That being true, it is not enough for the claimant to prove the existence of such trust.

"He must go further before the receiver of the defunct institution can be compelled to turn over to him any part of the trust property. Identification of [the church property] is necessary, and the burden is upon [the claimant] to trace the same as a trust fund into the custody of the receiver." *Andrew v. Farmers Sav. Bank of Goldfield,* supra.

For additional authority upon the same proposition see *Leach v. Stockport Sav. Bank,* 207 Iowa 478; *In re Receivership of Security Sav. Bank,* 205 Iowa 171; *Leach v. Iowa State Sav. Bank of Sioux City,* 204 Iowa 497; *Leach v. Farmers Tr. & Sav. Bank of Dedham,* 204 Iowa 1343; *Andrew v. Winnebago County State Bank,* 208 Iowa 392; *In re Receivership of Security Sav. Bank,* 205 Iowa 171.

No evidence of any kind was offered by claimant, directly identifying or locating the trust property. Consequently, so far as the direct evidence is concerned, the trust fund is not located in the bills receivable, credit deposit account with the correspondent bank, or any other place. This, however, does not mean that appellant must fail to obtain the relief. At this point "there is available to him a presumption." *Andrew v. Farmers Sav. Bank of Goldfield* (207 Iowa 394), supra, and other authorities above cited. Under the rule in this state, the trust property may be traced even though its identity has been lost. This is under the doctrine of presumption and augmentation. As said

in *Andrew v. State Bank of New Hampton* (205 Iowa 1064),
supra:

"Such process of 'tracing' may be by the introduction of
evidence that will tend to identify the property from the time it
leaves the truster, or like person, until it appears through the
trustee into the hands of the receiver, or other similar officer; or
the same result may be accomplished by the aid and assistance
of presumption, when the facts and circumstances so warrant."

Continuing, we stated in the New Hampton case:

"Necessity for 'augmentation' is due to the fact that there
is inability to further follow the identical 'property' because it
is commingled with the debtor's general estate, in which other
creditors are interested to the extent of their claims. Then, in
order to remove the equivalent of the 'trust property,' equity
permits the owner to take from the entirety an unidentified por-
tion which is equal to the original; but in this manipulation, in-
justice would result to the 'general creditors' if there is taken
from the common fund any part below the level of the mass ex-
isting without the addition of the 'trust' item."

See, also, other authorities above cited.

Generally, said presumption previously named has been lim-
ited, in bank receivership cases, to the cash remaining in the
vaults of the failing bank at the time it discontinued banking
operations. That is true because the particular trust involved
required that the trust property which was cash be held intact
by the trustee, and not converted into another form of property
or transferred to other banks in a manner inconsistent with the
trust. See authorities above cited. While explaining the sub-
ject, we further said, in *Andrew v. State Bank of New Hampton,*
supra, on page 1071:

"When cash remains in the failing concern at the time it
discontinued banking operations, and such money was afterwards
delivered to the receiver * * *, the presumption is that said
commingled fund contains 'the trust proceeds,' and the latter
can be removed from the whole without injury or injustice to
the general creditors, because there was 'augmentation.' "

Nevertheless, we have held that, under certain facts and cir-

cumstances, the presumption applies to other forms of assets, and enables the owner to trace his property thereto. *Andrew v. State Bank of New Hampton* (205 Iowa 1064), supra; *Andrew v. Security Sav. Bank of Perry,* 203 Iowa 546; *Andrew v. Farmers Sav. Bank of Goldfield* (207 Iowa 394), supra. Determination as to whether the presumption applies to bills receivable or deposits in a correspondent bank depends upon the nature of the trust. To illustrate, we said, in *Andrew v. Security Sav. Bank of Perry* (203 Iowa 546), on page 551:

"The fund was created [under the facts in that case] and to be kept, not in cash, but was created in the bills receivable and to be kept in mortgages. The original augmentation was in the bills receivable. *Leach v. Iowa State Bank,* 202 Iowa 887. The understanding was that the fund should be kept invested, and that it was on hand. The fund is satisfactorily shown to have come into the possession of the bank and to have augmented the assets. The presumption is that the fund was retained and turned over to the receiver. At this point, the burden of going on with evidence is on the receiver."

Unless the facts warrant it, application of the presumption rule will not be made to property other than cash in the bank when its doors were closed. Such is the general rule. *Andrew v. Winnebago County State Bank* (208 Iowa 392), supra; *Leach .v. Stockport Sav. Bank* (207 Iowa 478), supra; *Andrew v. Farmers Sav. Bank of Goldfield* (207 Iowa 394), supra; *Leach v. Iowa State Sav. Bank of Sioux City* (204 Iowa 497), supra. In *Leach v. Iowa State Sav. Bank of Sioux City,* supra, we declared:

"It is not presumed that the money was converted by the bank into bills receivable, or into a deposit account with another bank, or into any other form of property."

As before stated, that is true because the particular trust involved required that the trust property, which was cash, be held intact by the trustee, and not converted into another form of property or transferred to other banks in a manner inconsistent with the trust. Foundation for that holding is that it is presumed the trustee will properly execute the trust. There is no presumption the trustee will convert the funds or otherwise breach the trust. Everything depends, then, upon the nature of

the trust. By way of explanation, we said, concerning this subject, in *Andrew v. Farmers Sav. Bank of Goldfield* (207 Iowa 394), supra, on page 402:

"Those pronouncements [similar to the quotation from *Leach v. Iowa State Sav. Bank of Sioux City*, supra] are distinguishable from what was said in *Andrew v. Security Sav. Bank*, 203 Iowa 546, and *Murray v. North Liberty Sav. Bank*, 196 Iowa 729, where bills receivable were the subject-matter of the trust; because, if the trust is express, and definitely authorizes the conversion of cash into bills receivable, no doubt the presumption would be available."

But, without such express or other trust authorizing the trustee to convert the church funds into bills receivable or transfer them to a correspondent bank, the presumption is not available, except so far as the cash remaining in the insolvent bank when it closed its doors is concerned. See all the authorities above cited.

II. Resultantly, it is material at this juncture to determine whether the terms of the trust under consideration authorize the trustee to place claimant's funds into bills receivable or a deposit in a correspondent bank. Earnest argument is made by the claimant that such authorization is contained within the terms of the trust. Reliance at this juncture is made upon the testimony of Judge Popham, as well as the trust letter previously quoted.

It is to be recalled that Judge Popham said his first demand was for "liquid assets." Likewise, it is to be noted that the letter suggests the bank will return cash or its equivalent, etc. Connection is made by claimant between the liquid assets demanded by Judge Popham and the equivalent of cash referred to in the letter. Judge Popham having demanded liquid assets, and the letter agreeing to return the funds either in cash or the equivalent thereof, claimant maintains this authorized the bank to convert the church funds into bills receivable, or transfer them to the correspondent bank. Manifestly, this is a very doubtful construction. Whatever Judge Popham may have said in the first conversation, it is very clear and certain that he, upon all later occasions, asked for a trust relationship merely. Nothing on these later occasions was said by Judge Popham concerning

liquid assets. Apparently he was content with the trust contract. Moreover, the use of the term "or its equivalent" in the trust letter scarcely meant that the church funds were to be converted into bills receivable or anything else. The language, as before shown, is: "And agree that we [the bank] will return to you [the claimant] *in kind* [the italics are ours] all cash or its equivalent left with us."

This phrase "in kind" is entitled to significance. Return, under the agreement, was to be made of cash or its equivalent left with the bank, and such return was to be made "in kind." Regardless of this, however, and assuming, without deciding, that the trust agreement is to be construed as claimant insists, nevertheless the facts will not sustain the relief granted by the trial court.

First, consideration will be given to the bills receivable. Uncontradicted testimony was given by the cashier of the American Savings Bank to the effect that the trust funds were not invested in any way, but remained as they were on November 15, 1928. Corroboration of this evidence may be found in the fact that the bills receivable steadily declined after the creation of the trust. Hence, even though the presumption did exist, as contended by claimant, nevertheless the receiver's evidence overcame it.

Second, it is likewise true that, under the whole record, the funds have not been traced to the correspondent bank. Even accepting claimant's version of the trust agreement, to the effect that liquid assets were desired by the claimant, yet there is nothing to indicate that the trust funds were to be transferred to the correspondent bank, where they would be constantly drawn upon for the trustee's personal obligations. Also, under the trust agreement, the funds deposited with the American Savings Bank were to be held subject to the claimant's order. Ability of the bank to comply with such order, if it were a demand for cash (the correspondent bank held only a credit deposit account for the trustee), would necessitate its having the trust property at Marengo. Otherwise, the demand for cash could not have been fulfilled.

Again, the cashier of the American Savings Bank indicated that the church funds were in no way segregated, or otherwise handled, except that checks and orders were constantly drawn

upon all moneys deposited in the American Savings Bank at Marengo. Impliedly, if not expressly, therefore, the cashier admitted the dissipation of all the trust funds except that portion thereof remaining when the bank closed its doors. More than this, the account in the correspondent bank gradually decreased, from the time the trust was created until the American Savings Bank ceased doing business. Thus it is indicated, because of said constant decrease, that the trust funds were not removed from the American Savings Bank and placed in the correspondent bank. Therefore, even under claimant's theory of the case, the presumption, if it ever existed, has been overcome; because, under the record, it is quite clearly shown that the church fund, after it became trust property, was not converted into bills receivable or transferred to the correspondent bank. Obviously, there was a breach of trust on the part of the trustee, because it did not segregate and keep inviolate the trust property. Claim therefore, however, is in the nature of a general demand for damages. See *Leach v. Iowa State Sav. Bank of Sioux City* (204 Iowa 497), supra. Furthermore, the very fact that a breach of trust exists for the dissipation of the trust funds is indicative in itself that the claimant's property is not with the receiver. If the property is not with the receiver, it cannot be obtained in this action by the claimant. So, under this record, the claimant has not identified any of his trust property except the cash remaining in the American Savings Bank when it closed its doors.

III. But claimant argues that there was not cash enough in the American Savings Bank when the trust was created to satisfy the entire amount due on the church fund. Resultantly,  it is said that part of the church property must have been elsewhere in the bank's assets. A conclusion, therefore, was drawn that the claimant has a right to go out into those general assets and obtain at least the portion of the church property not represented by cash in the bank when the trust was created. Such argument does not help claimant, but rather tends to defeat his cause. Before the trust was created, the church property was not identified; for at that time the church was a general depositor, and hence a mere creditor of the bank. Wherefore, before the trust was created, when the church was just a depositor, it had only a claim against the bank

for the funds due. In order, then, to create the trust, it was necessary that the bank satisfy the claim by actively or constructively delivering to the claimant the money represented by the deposit, so that the same could be accepted in trust. Until that time, no part of the bank's assets became, in fact, the claimant's property. Said transaction is treated by the receiver as if the cash had been paid to the claimant and then redeposited. Transfer of the church funds in the bank was made by an ordinary check, which contemplated cash. Assignment was not made of any bank properties through the transaction, but rather, under the circumstances, the net result was that the bank, in legal effect, under the concessions in the record, cashed the check, and the money was redeposited in the trust account. Nothing appears in this transaction, therefore, to indicate that claimant has any property in the general assets of the bank.

IV. Under the judgment and decree of the district court, however, the claimant was allowed $15,152.10, being the full amount of the trust deposit. As said before, when the bank closed, there was $6,742.91 cash in its vaults. A  presumption arises, under the circumstances, within the rule announced in the foregoing cases, that claimant's property is in such cash; yet there are claimants for said remaining cash under different trusts. So the beneficiaries of said trusts, including the claimant in the case at bar, are to share pro rata in the cash remaining in the American Savings Bank when it closed its doors. *Leach v. Stockport Sav. Bank* (207 Iowa 478), supra; *Leach v. Iowa State Sav. Bank of Sioux City* (204 Iowa 497), supra; *Andrew v. Farmers Sav. Bank of Goldfield* (207 Iowa 394), supra.

The judgment and decree of the district court, then, was erroneous: First, to the extent that it allowed claimant to take any property in the receiver's hands other than the amount of cash remaining in the American Savings Bank when it closed (*Andrew v. Winnebago County State Bank,* supra; *Leach v. Stockport Sav. Bank,* supra; *Andrew v. Farmers Sav. Bank of Goldfield,* supra; *Leach v. Iowa State Sav. Bank of Sioux City,* supra) ; and second, because it did not require the claimant to prorate said remaining cash with other owners of trust property.

To the extent of the errors just indicated, the judgment and

decree of the district court is modified. As thus modified, it is affirmed.—*Modified and affirmed.*

STEVENS, FAVILLE, ALBERT, WAGNER, and GRIMM, JJ., concur.