L. A. ANDREW, State Superintendent of Banking, Receiver, Appellant, v. WASHINGTON LOAN & TRUST COMPANY, Defendant, Appellee; SAM T. DONAHEY, Trustee, Intervenor, Appellee.

No. 41977.

SEPTEMBER 26, 1933.

REHEARING DENIED JANUARY 12, 1934.

Wilson & Wilson, for appellant.

Edmund D. Morrison, for intervenor-appellee.

CLAUSSEN, J.—The Washington Loan & Trust Company, hereinafter referred to as the company, was engaged in the general banking business in Washington, Iowa, prior to October 10, 1931, on which date L. A. Andrew, superintendent of banking of the state of Iowa, was appointed its receiver. It had been named as trustee in a mortgage securing bonds on hotel property in Perry, Iowa. Intervenor was appointed its successor as trustee subsequent to the company's failure. On March 17, April 16, May 19, June 16, July 18, August 26, and September 21, 1931, payments, each in the sum of $317.50, were made by the mortgagors to the company as trustee. Prior to closing its doors on October 5, and about the 1st day of September, the company paid out all of the trust funds, on bonds secured by the mortgage, excepting $1,163.50. The intervenor asked that the receiver be required to return this sum to him on the grounds that said funds came into the possession of the receiver, yet on account of their trust character were not property of the company and not assets of its estate.

The trial court, with provisions intended to protect other like claimants, sustained intervenor's claims and in effect impressed the cash and cash items of the company and certain notes of the company with a trust in the hands of the receiver for the payment of the trust funds to intervenor.

The company carried very small cash balances in its cash drawer and vaults, such balance seldom being in excess of $2,000. It deposited its funds in an account in the Commercial Savings Bank, subject to its checks and drafts, and in several banks in Chicago. The payments of trust funds to the trustee, above referred to, were made by checks, which were deposited in the company's account in the Commercial Savings Bank, in which account such deposits were mingled with the company's deposits derived from other sources. It will be observed that because of such deposit of the funds in the company's account in another bank the trust funds were not mingled with the company's cash. The intervenor pleads,

and it is established as a fact, that said payments were not segregated from the company's own money and thus kept, in conformity with the company's duty as trustee, but were deposited and mingled in a deposit in the Commercial Savings Bank.

In this situation the presumption that trust funds mingled with the bank's cash are preserved in the cash taken over by the receiver in an amount equal to the smallest cash balance in the interim between the receipt of the trust funds and the appointment of the receiver has no application. The theory sustaining such presumption has been frequently explained in the recent opinions of this court and will not be restated. In re Receivership American Savings Bank of Marengo, 210 Iowa 568, 231 N. W. 311; Andrew v. State Bank of New Hampton, 205 Iowa 1064, 217 N. W. 250. The presumption that the company performed its duty in relation to the preservation of the trust funds cannot sustain a finding that the trust funds were kept intact in cash, when it is pleaded and proved that they were immediately converted by the company and deposited and mingled in its account in another bank. The trust funds did not become a part of cash on hand in the first instance and it is not presumed that later on they were added to cash on hand and there preserved. Andrew v. State Bank of New Hampton, 205 Iowa 1064, 1072, 217 N. W. 250.

Intervenor proved that between the middle of June and the time the company closed its doors, $15,800 were withdrawn from the company's account in the Commercial Savings Bank, in amounts ranging from $100 to $1,500, and placed in the company's cash drawer, and claims that by this process the trust funds were traced into the cash drawer. We will not discuss this claim at this juncture, but will consider it in connection with intervenor's claim that he has also traced the trust funds into notes belonging to the company, taken over by the receiver, which were given for money paid to the makers out of the cash drawer or by check or draft on its account in the Commercial Savings Bank.

It may be of interest to note that the account of the company in the Commercial Savings Bank was overdrawn in an amount in excess of $1,500 on the 24th day of September and that the date of such overdraft was subsequent to the deposit of the last item of trust funds in such account.

Between the 1st day of March, 1931, and the time it closed its doors, the company took notes in the aggregate amount of $33,000.

The funds for which such notes were taken were paid to the makers in cash out of the cash drawer or by check on the company's account in the Commercial Savings Bank. The last statement may not be literally correct, but it is sufficiently accurate for the needs of the case. In any event, it is true concerning the great majority of notes. Intervenor contends that because he has traced the trust funds directly into the account of the company in the Commercial Savings Bank, and shown that funds were withdrawn by check from such account and put in the cash drawer, he has traced the trust funds into the notes taken for money paid to makers out of the cash drawer as well as into the cash and cash items taken over by the receiver. He likewise contends that he has traced the trust funds into the notes taken from makers who received their money by check on the company's account in the Commercial Savings Bank.

The trust funds were received in the form of checks or drafts —credits—and were deposited in another bank and in consequence cannot be traced in kind into the company's cash drawer or into the notes. If trust property cannot be traced into the hands of the receiver in kind, but can only be shown to have been intermingled in a common mass, the law will not permit a portion of the common mass to be set apart as trust property unless it is shown that the assets taken by the receiver have been augmented through the intermingling of the trust property in the common mass, so that a portion of the mass can be set apart without injury to other claimants. See Andrew v. State Bank of New Hampton, 205 Iowa 1064, local citation 1070, 217 N. W. 250, where our cases on this matter are collected and discussed. It is not sufficient to show that the trust property went into a common mass from which the property in the hands of the receiver has emerged. The receipt of many sums, totaling in the aggregate great amounts of money, results in great losses quite as frequently as in assets of great value. If business had been suspended when there was no longer profit in it and yet before losses occurred, it could safely be said that the payment of the trust funds had augmented the mass taken over by the receiver. But business was not then suspended. During the time that the trust funds were being paid in, the record discloses that the company was operated at a loss. In this situation, and in the complete absence of proof, other than that cash was drawn out of the account, in the Commercial Savings Bank and placed in the cash drawer and notes taken for money paid out of it and for checks drawn on the com-

pany's account in the Commercial Savings Bank, it cannot be determined whether losses or assets were increased through the receipt of the trust funds. While intervenor may claim that cash and notes taken over by the receiver would necessarily be $1,163.50 less in value if the trust funds had not been paid in, the receiver can say with equal support in logic, that expenditures would have been $1,163.50 less, if the trust funds had not been available for loss. There is no presumption that trust funds were invested in general assets coming into the possession of the receiver, while operating expenses and losses were met out of assets which have been dissipated. The basic presumption, from which springs the presumption that trust cash is preserved in the cash balance remaining on hand from the time of the receipt of the trust cash until the appointment of the receiver, is that the trustee does its duty. The basic presumption of performance of duty is applied. When trust funds are converted by the trustee, the trustee's duty has been breached. There can be no presumption that trust money went into notes, for there is no duty to invest it in notes. The duty resting on the trustee is to preserve the trust funds intact in cash. In the absence of evidence to the contrary, the presumption of performance of duty warrants a finding that such duty of preservation has been thus performed, but with the end of duty comes the end of presumption. Leach v. Iowa State Savings Bank of Sioux City, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728. Entirely unaided by presumption we are asked to hold that trust funds were retained in general assets while losses and operating costs were met out of the company's property. There is no evidence that such is the case. During the time that the notes totaling $33,000 were being taken the company paid out operating overhead expenses in the sum of $11,-150.76 and interest in the sum of $35,972.42. There is no sound reason for finding as a fact that the trust funds went into the notes and were not used to pay overhead and interest. During this time substantial deposits of funds were made with the company. There is no logical process by which it can be determined whether the trust funds or the deposits were preserved in the assets taken over by the receiver, or that the assets taken over were augmented by the receipt of trust funds any more than by the receipt of deposits. The record indicates that the company operated at a heavy loss during the period that the trust funds were being paid in. The record does not furnish a complete picture for the comparison of

the asset accounts of the bank at the beginning and end of the period, but in so far as comparison is possible a very material shrinking is revealed. The only place in which an increase is indicated is in the balance in the account in the Commercial Savings Bank, in which a substantial overdraft occurred, as hereinbefore noted, on September 24, 1931, and against which relief was neither asked nor granted. On the whole the record is persuasive that the assets taken over by the receiver were not augmented through the payment of the trust funds. In this situation the fact that the cash and cash items and notes hereinbefore referred to may have had their origin and source in the common fund into which the trust funds were paid, does not warrant the setting aside of any portion of the intermingled mass or its derivatives to restore the trust funds. The fatal defect is lack of proof of augmentation.

The decree of the trial court is reversed, and the cause remanded for decree in conformity herewith.—Reversed and remanded.

ALBERT, C. J., and EVANS, KINDIG, and DONEGAN, JJ., concur.