L. A. ANDREW, Superintendent of Banking, Appellant, v. FARMERS STATE BANK OF LAMONT, Defendant.

IN RE CLAIM OF HAZEL M. ZWANZIGER, Administrator, Appellee.

No. 42171.

NOVEMBER 14, 1933.

Molloy & Smith, for appellant.

Roy A. Cook, for appellee.

KINTZINGER, J.—The record in this case shows that Fred Retz died in April, 1929, and that Mary Retz, Fred Talcott, and V. M. Reed were appointed executors of his estate. Fred Talcott was a director and V. M. Reed was the president of the Farmers State Bank.

Prior to his death Fred Retz was indebted on his own personal obligations in the sum of about $8,000. He was also indebted to the Farmers State Bank upon other notes signed by himself and Mary Retz, his wife, as joint makers to the extent of $2,689.83. The estate of Fred Retz was insolvent. In his lifetime he had transacted considerable business with the Farmers State Bank.

Shortly after the death of Fred Retz, Mary Retz, as executrix of his estate, received a draft of $2,689.83 belonging to his estate. This draft was turned over to the bank in payment of joint notes of Fred Retz and Mary Retz aggregating that amount. The draft was cashed, and the money paid into the assets of the bank April 24, 1929. This money was so paid without any order or authority of court.

Some time thereafter Mary Retz died, and the claimant herein was appointed administratrix with the will annexed of the estate of Fred Retz. More than a year thereafter the court ordered the administratrix to demand a return of the money paid to the bank on the joint notes of Mr. and Mrs. Retz and on receipt thereof to return the notes to the bank. A notice of the court's order, and a demand for the return of the money, with a tender of the notes, was made and served on the bank in May, 1931. The bank refused to repay the money. In December, 1931, the bank became insolvent, and L. A. Andrew, state superintendent of banking, was appointed receiver.

The record shows that the cash which came into the hands of the receiver when appointed was $3,951.85. The bank also had on deposit in other banks to its credit the sum of $3,376.04.

The administratrix filed a claim for preference with the receiver. Her claim was rejected by him in his classification report filed. The claimant filed objections to the classification made by the receiver on the grounds that the draft paid into the bank in

April, 1929, belonged to the estate of Fred Retz, deceased; that the estate was insolvent, and the payment of this draft to the bank on a joint indebtedness of Fred Retz and Mary Retz was wrongful, unauthorized and disapproved by the court; it was unlawful and wrongful to pay said notes in full. The lower court allowed her claim as a preference against the assets of the bank in the sum of $2,689.83.

The record shows that the estate of Fred Retz was insolvent. This being so, it is contended by claimant that the executors had no authority to pay any of the claims against the estate in full; that, under the laws applicable to the distribution of the assets in an insolvent estate, it became necessary for all creditors to receive a pro rata share; that the unauthorized payment of any claims in full would be improper and wrongful; and that such payment to the bank would create a trust fund in the hands of the bank. It cannot be seriously claimed that the bank had no knowledge of the insolvency of the Fred Retz estate, because the president of the bank and one of its directors were coexecutors with Mary Retz. As such they must have known of the insolvent condition of his estate.

█ I. The record in this case shows that the executrix, with the knowledge and consent of the bank, paid funds of the estate to the bank in payment of a joint obligation of the decedent and his wife; that such payment was made without any order of court directing or approving the same. It further appears from the evidence that the decedent's estate was insolvent, and that more than all of the assets of his estate would be necessary to pay the indebtedness of said estate. It is the settled law of this state that in the distribution of an insolvent's estate the assets must be prorated among all of its creditors. This was not done. The evidence shows that the executrix had no business experience whatsoever, and that she paid the draft in question to the bank at the request of its cashier. The court itself would be unauthorized to permit the payment in full of part of the claims against an insolvent's estate. It therefore needs no argument to show that the payment of the draft in question to the bank, as shown by the evidence, without any order or authority of court, was wholly improper and wrongful.

It is the settled law of this state that a deposit in a bank by a guardian of guardianship funds as a loan *without a directing or approving order of the court is wrongful;* and the bank at once becomes a trustee of the fund for the benefit of the estate. Andrew

v. Farmers Sav. Bank of Goldfield, 207 Iowa 394, 223 N. W. 249; Bates v. Dunham, 58 Iowa 308, 12 N. W. 309; McCutchen v. Roush, 139 Iowa 351, 115 N. W. 903; McIntire v. Bailey, 133 Iowa 418, 110 N. W. 588; Easton v. Somerville, 111 Iowa 164, 82 N. W. 475, 82 Am. St. Rep. 502; Andrew v. Sac County State Bank, 205 Iowa 1248, 218 N. W. 24; Slusher v. Hammond, 94 Iowa 512, 63 N. W. 185.

For the foregoing reasons it is the holding of this court that, when such funds were received by the bank, it became a trustee of such funds for the benefit of the Fred Retz estate.

■ II. Although the wrongful transfer of the draft in question resulted in creating a trust fund in the hands of the bank, such fact in itself is not sufficient to give the claimant a preference against all the assets of the bank coming into the hands of the receiver. In order to establish a preference against the assets of the bank, it is necessary to trace such funds into specific assets of the bank coming into the hands of the receiver, so that they can be identified; it must also be shown that the assets or funds of the bank delivered to the receiver were augmented by such trust funds. Leach v. Iowa State Savings Bank, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728; First State Bank v. Oelke, 149 Iowa 662, loc. cit. 667, 129 N. W. 70; Andrew v. Washington Loan & Trust Company, 217 Iowa 464, 250 N. W. 177.

"That plaintiff was a trust creditor does not of itself entitle him to preference over general creditors. To obtain that right he must show, by presumption of law or otherwise, that his fund has been preserved in the hands of the assignee, as an increase of the assets of the estate, from which it may be taken without impairment of the rights of general creditors." Leach v. Iowa State Savings Bank, 204 Iowa 497, loc. cit. 506, 212 N. W. 748, 215 N. W. 728, 729.

In First State Bank v. Oelke, 149 Iowa 662, loc. cit. 667, 129 N. W. 70, 72, we said:

"It is the settled rule of our cases that a preference will not be allowed unless it be found that the fund has increased the present assets of the bank, and that it may be taken therefrom without impairment of the rights of creditors."

While the cashier of the bank testified that the money received from the proceeds of the draft went into the assets of the bank, there

is no evidence whatever tending to show that the assets (aside from cash) taken over by the receiver were augmented by the placing of such funds into the bank's assets. The record is entirely silent as to the amount of the bank's assets at the time it is claimed said trust funds went into them, and there is no evidence showing the lowest amount of the bank's assets between that time and the time when the bank went into the hands of the receiver. Neither does the record show the amount or value of the assets taken over by the receiver. There is therefore no method by which it can be determined whether the alleged trust funds were preserved in the assets taken over by the receiver, or that such assets were in any manner augmented by the receipt of such funds. Andrew v. Washington Loan & Trust Co., 217 Iowa 464, 250 N. W. 177.

The ultimate fact necessary to be established is that the fund has been preserved in the hands of the receiver as an increase of the assets of the estate, from which it may be taken without impairing the rights of general creditors. Hudspeth v. Union Trust & Savings Bank, 197 Iowa 913, 193 N. W. 279; City of New Hampton v. Leach, 201 Iowa 316, 207 N. W. 348; Murray v. North Liberty Savings Bank, 196 Iowa 729, 195 N. W. 354; Whitcomb v. Carpenter, 134 Iowa 227, 111 N. W. 825, 10 L. R. A. (N. S.) 928; Seeley v. Seeley -Howe-Le Van Co., 128 Iowa 294, 103 N. W. 961; Andrew v. Washington Loan & Trust Co., 217 Iowa 464, 250 N. W. 177; Leach v. Iowa State Savings Bank, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728; Andrew v. State Bank of New Hampton, 205 Iowa 1064, 217 N. W. 250; In re Receivership American Savings Bank, 210 Iowa 568, 231 N. W. 311.

In the recent case of Andrew v. Washington Loan & Trust Co., 217 Iowa 464, 250 N. W. 177, we said:

"If trust property cannot be traced into the hands of the receiver in kind, but can only be shown to have been intermingled in a common mass, the law will not permit a portion of the common mass to be set apart as trust property unless it is shown that the assets taken by the receiver have been augmented through the intermingling of the trust property in the common mass, so that a portion of the mass can be set apart without injury to other claimants. See Andrew v. State Bank of New Hampton, 205 Iowa 1064, loc. cit. 1070, 217 N. W. 250, where our cases on this matter are collected and discussed."

The reasons for this rule were fully set out in the recent cases of Leach v. Iowa State Savings Bank, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728; Andrew v. State Bank of New Hampton, 205 Iowa 1064, 217 N. W. 250; In re Receivership American Savings Bank, 210 Iowa 568, 231 N. W. 311; and we will not attempt to review them here.

In Leach v. Iowa State Savings Bank, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728, we said:

"So-called claims of preference of the character of those involved in this case may not be allowed merely as for a liability or debt of the insolvent. A liability for trust property misappropriated or lost is not entitled to a preference. The right to preference consists in the right of property in assets in the possession of the receiver, but equitably belonging to claimant, and not belonging to the bank. The claimant is in the attitude of pursuing his own property. He may pursue it into different forms of property, if it is shown that it has been converted into such. But his right ultimately is to recover his own property, not to recover a debt or liability for his property. The principle is that the bank is not entitled to use property belonging to another to pay its debts, and its creditors are not entitled to resort to such property for satisfaction. Officer v. Officer, 120 Iowa 389, 393, 395, 94 N. W. 947, 98 Am. St. Rep. 365; Farnsworth v. Muscatine P. & P. I. Co., 177 Iowa 21, 158 N. W. 741.

' "The guiding principle is that a trustee cannot assert a title of his own to trust property. If he destroys a trust fund by dissipating it altogether, there remains nothing to be the subject of the trust. But, so long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust." ' In re Hallett's Estate, 13 Ch. Div. 696, quoted in Nonotuck Silk Co. v. Flanders, 87 Wis. 237, 58 N. W. 383."

In the case of Stilson v. First State Bank, 152 Iowa 724, loc. cit. 730, 133 N. W. 354, 356, we said:

"Claimant's claim of preference does not present a controversy with the bank but with the other creditors of the bank. The right of preference as against other creditors is not an equity. When such preference is awarded, it is awarded strictly as a right of property, and not as a mere right to equitable relief against other creditors."

The theory of the law is that, in order to secure a preference against trust property, aside from cash funds, in the bank, it is necessary to trace the funds into the property against which claimant asks a preference. In this action there is no evidence whatsoever tending to show that the funds paid to the bank were invested in or augmented any of the assets (aside from cash) which came into the hands of the receiver. Claimant has therefore failed to show any equitable title to or interest in any such assets, and is therefore entitled to no preference therein.

What we say in this division has reference to the general assets, bills and notes and deposits in other banks, and has no reference to the amount of cash on hand at the time the bank closed. The claim for preference against such cash is discussed in the next division hereof.

III. The courts have adopted a different rule with reference to cash funds in the hands of a bank. Under this rule the claimant is entitled to the benefit of a presumption that the trust funds themselves will not be dissipated by the bank, and that the money paid into the bank is included in the cash funds on hand in the bank between the time they were placed there and the time they are delivered to the receiver. It will not be presumed, however, that the funds were converted into bills receivable, or into a deposit account in another bank, or into any other form of property. Leach v. Iowa State Sav. Bank, 204 Iowa 497, loc. cit. 509, 212 N. W. 748, 215 N. W. 728; Andrew v. Washington Loan & Trust Co., 217 Iowa 464, 250 N. W. 177; Andrew v. County State Bank, 208 Iowa 396, 226 N. W. 73; Leach v. Stockport Sav. Bank, 207 Iowa 478, loc. cit. 485, 223 N. W. 171; Andrew v. State Bank of New Hampton, 205 Iowa 1064, 217 N. W. 250; Andrew v. Farmers Sav. Bank of Goldfield, 207 Iowa 394, 223 N. W. 249.

In the case of Leach v. Iowa State Sav. Bank, 204 Iowa 497, loc. cit. 509, 212 N. W. 748, 215 N. W. 728, 731, we said:

"If it appears that the claimant's money was intermingled with the bank's money, the trust attached to the commingled fund. When by withdrawals the commingled fund has been diminished below the amount of the trust fund, the trust fund is to the extent of such diminution dissipated. As said in the Slater case, 18 R. I. 352, 27 A. 443, supra: 'The money is spent and gone.' The trust for cash received by the bank may be established against the cash found in the possession of the bank when the receiver takes charge."

In Andrew v. State Bank of New Hampton, 205 Iowa 1064, 217 N. W. 250, we said:

"When the cash remains in the failing concern at the time it discontinued banking operations and such money was afterwards delivered to the receiver, * * * the presumption is that said commingled fund contains 'the trust proceeds,' and the latter can be removed from the whole without injury or injustice to the general creditors, because there was 'augmentation.' Charity assumes that the trustee did no wrong, but spent and disposed of his own property and retained that which belonged to others."

In Leach v. Stockport Sav. Bank, 207 Iowa 478, 223 N. W. 171, we said:

"It appears that at the time of the bank failure there was cash in the institution amounting to $5,699.76, which passed into the hands of the receiver. The inference is that it belonged to appellant. Rebuttal of the presumption was not made by the receiver. Therefore, we are constrained to hold that appellant has proven, through the inference, that said cash to the amount named belonged to and was its property."

In the case of Andrew v. Farmers Savings Bank of Goldfield, 207 Iowa 394, 223 N. W. 249, we said:

"Among the assets of the Farmers Savings Bank, of Goldfield, which came from its own vaults into the hands of the receiver was $3,503.98 in cash. Aided by the presumption aforesaid, appellant has sufficiently traced that part of his ward's money into the hands of the receiver, and, as there identified, it is to be redelivered to the equitable owner thereof."

Under the record in this case it is shown that the bank in question, when it closed, had on hand the sum of $3,951.85 in cash which passed into the hands of the receiver. The inference is that this amount belonged to the appellee. This presumption was not rebutted by appellant, and we are constrained to hold that the appellee has proven through such inference that said amount of cash included the trust funds wrongfully paid into the bank by claimant's estate. It also appears from the record that other preferred claims amounting to $2,828.22 have been allowed and were given preference. If so, according to our former holdings they must be prorated among the preferred claimants if the common fund is not

sufficient to pay all. Leach v. Iowa State Sav. Bank, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728; Andrew v. State Bank of New Hampton, 205 Iowa 1064, 217 N. W. 250; Leach v. Stockport Sav. Bank, 207 Iowa 478, 223 N. W. 171.

Although the record shows that the Farmers State Bank had credits for deposits in foreign banks, it will not be presumed, as shown by the previous division of this opinion, that the trust funds in question were included therein or in any other form of property. Leach v. Iowa State Sav. Bank, 204 Iowa 497, loc. cit. 509, 212 N. W. 748, 215 N. W. 728; Andrew v. Washington Loan & Trust Co., 217 Iowa 464, 250 N. W. 177; Andrew v. County State Bank, 208 Iowa 396, 226 N. W. 73; Leach v. Stockport Sav. Bank, 207 Iowa 478, 223 N. W. 171.

For the foregoing reasons it is the holding of this court that appellee's claim be and is established as a preferred claim against the actual cash of $3,951.85 in the hands of the bank at the time it closed. As the appellee has failed to trace any of the trust funds into any other assets of the bank, the order of the lower court allowing a general preference against all the assets of the bank is therefore hereby modified and reversed as herein indicated. A preference is allowed against the amount of cash on hand in the bank when it closed, as actually turned over to the receiver. However, if other preferred claims have likewise been established as trust funds against such amount, then there must be a prorating of the common fund among such claimants.

This case is therefore affirmed in part and reversed in part, and is remanded to the district court for a decree in harmony herewith.

Affirmed in part; reversed in part.

ALBERT, C. J., and STEVENS, ANDERSON, MITCHELL, and KINDIG, JJ., concur.