GOOD *v.* FERGUSON & WHEELER LAND, LUMBER & HANDLE

COMPANY.

Opinion delivered February 17, 1913.

1. APPEAL AND ERROR—FAILURE OF CO-DEFENDANT TO ANSWER.—When two defendants in an action were served, but only one answered, if plaintiff goes to trial upon the answer of the one defendant, without moving for judgment against the other, and the answer filed shows a common defense, the question that the second defendant did not answer can not be raised for the first time on appeal. (Page 121.)

2. DEEDS—PAROLE EVIDENCE TO PROVE CONSIDERATION.—When a deed of conveyance recites no specific consideration, but recites merely that the conveyance was made "in consideration of value received," it is competent to show what the real purpose and consideration was. (Page 124.)

3. CORPORATIONS—ASSUMPTION OF ANOTHER'S DEBTS.—One corporation may become liable for the debts of another when it has by reasonable implication assumed the payment of the liabilities of the debtor corporation, and it is a question for the jury to determine from the facts and circumstances whether they lead to the implication that when a new corporation takes over the property of an old one, it undertakes to discharge the latter's obligations. (Page 124.)

4. CORPORATIONS—ASSUMPTION OF OBLIGATIONS—PERSONAL INJURIES.—
Where a new corporation takes over the property of another cor-
poration, and assumes all its debts and obligations, it will be liable·
in damages for personal injuries suffered by an employee of the
old corporation, caused by the negligence of the servants of the
latter corporation.   (Page 127.)

5. MASTER AND SERVANT—LIABILITY FOR INJURY TO SERVANT.—In an
action for damages for injury to plaintiff's eye, due to negligence
of an employee of defendant in permitting a bolt to come in con-
tact with a sand belt causing sand to fly therefrom in sufficient
quantities to injure plaintiff's eye, a question is made for the jury
as to the negligence of defendant's servant, and when the injury
was severe, it is proper to infer that it was sand and not dust
that caused the injury.   (Page 128.)

6. MASTER AND SERVANT—ASSUMED RISK.—When plaintiff is a minor
seventeen or eighteen years old, and is injured by sand being
blown into his eye from a sand belt at which he was working,
when he stooped to pick something from the floor, it can not be
said as a matter of law that he assumed the risk of this danger;
and in determining whether plaintiff assumed the risk of the
danger of flying sand, the jury must consider his age, and intelli-
gence and the amount of experience he has had on that particular
work.   (Page 129.)

Appeal from Clay Circuit Court, Western District;
*W. J. Driver,* Judge; reversed.

*G. B. Oliver,* for appellant.

1. If the appellant was young, inexperienced and
without warning placed in a dangerous place to work,
and was injured by sand getting into his eye through the
negligence and carelessness of Phillips in failing to ad-
just a proper nose-piece with a proper-sized shoulder to
grind the handles, etc., there was liability on the part of
the Western Handle Company at least.   In determining
whether the court was authorized in taking these ques-
tions from the jury, that view of the evidence will be
taken which is most favorable to the losing party, the
appellant.   149 S. W. (Ark.) 90.

2. Wheeler filed no answer and made no defense.
The directed verdict was erroneous as to him.

If the Western Handle Company is liable, the Fergu-
son & Wheeler Land, Lumber & Handle Company is also
liable.

A new corporation may become responsible for the liabilities of the old, where the circumstances are such as to warrant the conclusion that the new corporation is but a mere continuation of the old; or where, in express terms, or by reasonable implication, it assumed the debts of the old corporation, or where the assets of the old corporation remain liable in the hands of the new one, the circumstances being such as to render the transaction a division of corporate property as a trust fund for the payment of creditors, or a conveyance for the purpose of hindering, delaying or defrauding creditors. 10 Cyc. 286-288; Thompson on Corp., § § 6542-6543, 6545, 6547; *Id.,* § § 265, 266; 23 Am. & Eng. Enc. of L. 773, 775; 86 Ark. 300-303; 30 Am. & Eng. Enc. of L. 887; 87 N. W. 656.

*Basil Baker,* for appellee.

The evidence shows that the two corporations are not the same in law or in fact. The fact that some of the stockholders were interested in both corporations does not make of them one corporation. 69 Ark. 85; 94 Ark. 461.

As to whether the new corporation will be responsible for the liabilities of the old, it is a question of intent to be determined from the terms of its articles of association. 5 Thompson on Corp., § 5983; 63 S. W. 776.

Where there is no statute fixing liability upon a corporation which succeeds another in property rights for the debts or liabilities of the first, and no contract or agreement that successor will assume such liabilities, as is the case in this State, then there is no liability except for contractual obligations, and then only in chancery wherein the corporate assets are bound as a trust fund, or where the transaction is fraudulent and with intent of cheating creditors. 10 Cyc. 287 *et seq.;* 9 Am. & Eng. Enc. of L. (2 ed.) 608, 609, 619; 15 How. 304; 8 Peters, 284; 37 Ark. 23; *Id.* 17; 59 Ark. 562.

McCulloch, C. J. This is an action instituted by the plaintiff, Herbert Good, against two Missouri corporations, the Western Handle Company, and the Ferguson & Wheeler Land, Lumber & Handle Company, George

B. Wheeler and William Ferguson, to recover damages for personal injuries received while at work in the service of the first of the above-named corporations.

The Western Handle Company seems not to have been served with process, and did not appear in the action. The same may be said of William Ferguson, another of the defendants.

The Ferguson & Wheeler Land, Lumber & Handle Company answered all of the allegations of the complaint, and the case went to trial upon the issues thus made.

Defendant Wheeler, though having been served with process, did not file an answer.

Upon the testimony adduced by plaintiff, the court gave a peremptory instruction in favor of the defendants. Judgment was entered accordingly in defendants' favor, and plaintiff appealed.

Counsel for plaintiff insist, in the first place, that there should have been a judgment by default against defendant, Wheeler. But as plaintiff did not move for such judgment, and went to trial upon the answer of the other defendant, which presented a defense in some respects common to all the defendants, it is too late now to complain that the court treated the defense as a common one, and directed a verdict against the plaintiff in favor of all of the defendants. If, therefore, the testimony adduced at the trial was not sufficient to warrant a verdict against Wheeler, or the other defendants served in the action, the court was correct in taking the case from the jury and rendering a judgment against the plaintiff.

The case is presented here principally on the question of the responsibility of the Ferguson & Wheeler Land, Lumber & Handle Company for the liabilities of the other corporation, including its liability, if any is established, for the plaintiff's injury. We will direct our attention, therefore, to that question.

The testimony concerning the status of the two corporations, their relations to each other, and the amount of property and liabilities of each, is confined to the testi-

mony of Mr. George B. Wheeler, who was one of the organizers and officers of each corporation as well as a member of the partnership composed of himself and William Ferguson under the style of Ferguson & Wheeler, which owned substantially all the stock in both corporations. The firm of Ferguson & Wheeler had its principal offices in Poplar Bluff, Missouri, but owned considerable property in Arkansas as well as in Missouri. It owned about 3,000 acres of timber land and operated two or more plants in Arkansas for the manufacture of lumber and its products. It also owned and operated a mercantile establishment at Corning, Arkansas. In the spring of the year 1907, the members of the firm of Ferguson & Wheeler organized and incorporated the Western Handle Company, the members of that firm owning the stock except a few qualifying shares issued to its employees. Another person, Angus McNeill, was to be an equal stockholder, but he didn't pay for any of his stock, and the shares were not issued to him. The handle factory near Corning, at which plaintiff was working when he received his injuries, was operated in the name of the Western Handle Company, but it was, in fact, owned by the firm of Ferguson & Wheeler. The intention was for the partnership to convey the property to said corporation, but that was never done. Plaintiff received his injuries on December 20, 1907, while the plant was being operated in the name of the Western Handle Company. During the operation of the business of that corporation all the debts contracted by it were guaranteed by the members of the firm of Ferguson & Wheeler. Mr. Wheeler testified positively as to that fact. In April, 1908, it was found that the Western Handle Company was considerably involved in debt, as was also the firm of Ferguson & Wheeler, though neither of the concerns were shown to have been insolvent. Both concerns were heavily in debt, and the business condition brought about by the panic of 1907 made it necessary for a change to be made in the business. The Western Handle Company was incorporated in the sum of $30,000, and the idea was conceived

by the members of the Ferguson & Wheeler firm to organize a new corporation with a much larger capital and take over the property and business of the Western Handle Company, and also that of the firm of Ferguson & Wheeler, in order that a new loan could be floated sufficient to cover all of the old indebtedness. This idea was carried out by the organization of another corporation named the Ferguson & Wheeler Land, Lumber & Handle Company, which was incorporated with a capital stock in the sum of $300,000. The stock was all taken by the two members of the firm except one qualifying share issued to its bookkeeper. Ferguson was president of both corporations and Wheeler was treasurer of both. Upon the organization of the new corporation, the Western Handle Company conveyed all of its property to the firm of Ferguson & Wheeler, who, in turn, conveyed it to the new corporation. The partnership, by separate deeds, conveyed its real estate to the new corporation, and the testimony of Mr. Wheeler shows that all the property of the old corporation and all the property of the partnership except the stock of goods at Corning was turned over to the new corporation. All of the transactions with respect to these changes took place simultaneously, or substantially so, that is, within a few days of each other. The deed from the Western Handle Company to Ferguson & Wheeler recited that "in consideration of value received," the corporation conveyed "all the personal property and effects of this company" to Ferguson & Wheeler, a partnership composed of William Ferguson and George B. Wheeler; and the deed from Ferguson & Wheeler to the new corporation, the Ferguson & Wheeler Land, Lumber & Handle Company recited that "in consideration of value received," said firm conveyed "all personal property and effects" to the new corporation. The last deed contained the following clause with reference to the property conveyed, which was substantially in the words of the clause in the deed from the Western Handle Company to the partnership, towit: "It being intended hereby to convey, and the grantor herein has

conveyed, to said corporation all of the personal property and effects of the grantor, of every kind and character and wheresoever located, consisting of goods, wares and merchandise, finished and unfinished logs, lumber, accounts, bills receivable, etc., as evidenced by their books March 1, 1908.''

Mr. Wheeler testified that these changes were merely for the purpose of convenience of himself and Mr. Ferguson, who were the real owners of all the property, and of all the stock of each of the corporations, that they were personally liable as guarantors for all the debts of the Western Handle Company, that the partnership assumed, and was to pay all the debts of the Western Handle Company, and that the new corporation likewise agreed to assume and pay all of said debts. He testified further that the new corporation borrowed $30,000, and applied it in satisfaction of debts of the Western Handle Company. In making these various changes and conveyances, no inventories were taken either of the property of the Western Handle Company or of Ferguson & Wheeler, and no consideration was actually paid for the conveyances.

All of the transactions and conveyances were, according to the testimony of Mr. Wheeler, merely for the purpose of getting title to the property in the name of the new corporation, and of consolidating all of the interests of the owners, Ferguson & Wheeler, in the new corporation. It is true that Mr. Wheeler, in his testimony, seems to make some distinction between assuming the ''debts'' and the ''liabilities'' of the Western Handle Company, and mentions the fact that at the time of these transactions, the plaintiff had not asserted any claim for damages, and that they did not take into consideration that claim; but his testimony is certainly broad enough to justify the conclusion that there was an agreement that all the liabilities of the Western Handle Company were to be discharged. He testifies positively that there was no intention on the part of himself or his partner to escape the payment of any just liability of the Western Handle Company, and that it was their intention to pay

all the debts, and merely transferred the property for convenience in consolidating the property and business in the hands of a new corporation of a much larger capital, so that a loan in sufficient amount could be floated to pay off all obligations and operate the business.

It is additionally significant that all of the insurance policies, including employer's liability insurance as well as other kinds, were transferred by the old to the new corporation. In fact, the inference from Mr. Wheeler's testimony is, that every right and interest possessed by the old corporation passed to the new.

After going over the matter thoroughly in his examination in chief and cross examination, in which he reiterated the statements hereinbefore referred to, he was recalled to the witness stand, and stated positively that the firm of Ferguson & Wheeler assumed the payment of all the debts of the Western Handle Company when the property was transferred, and that the Ferguson & Wheeler Land, Lumber & Handle Company, in taking over the assets of the old corporation, assumed the payment of debts to the same extent that the firm of Ferguson & Wheeler had done. It should be noticed, in this connection, that the deeds of conveyance did not recite any specific consideration." It was competent, of course, to show what the real purpose and consideration was, and no rule of evidence was violated in the introduction of that testimony. *St. Louis & North Arkansas Rd. Co.* v. *Crandell,* 75 Ark. 89.

The case was here formerly on appeal from a judgment in plaintiff's favor, and we reversed it on the sole ground that the court erred in admitting in evidence a deposition of George B. Wheeler. In stating the law of the case, we said that "liability, if any (of defendant, Ferguson & Wheeler, Land, Lumber & Handle Company) must arise from the terms of the purchase." 97 Ark. 106.

This court has announced the rule, which is in line with the weight of authority, that "the assets of an incorporated company are a trust fund for the payment of its debts, and may be followed into the hands of any person acquiring them with notice of the trust." *Jones, Mc-*

*Dowell & Co.* v. *Ark. M. & A. Co.,* 38 Ark. 17. This doctrine is not, however, without its restrictions. *Worthen* v. *Griffith,* 59 Ark. 562. The law seems to be well settled that a new corporation is not liable for the debts of an old corporation merely because the former was organized to succeed the latter, .and in *Lange* v. *Burke,* 69 Ark. 85, it was held that the fact that two corporations were practically under the same control, and had the same officers, employing the same agents and having intimate business relations with each other, did not necessarily prove that the two corporations were in fact the same in the sense that one could not assert a claim against the other while insolvent so as· to take the assets away from other creditors. The necessary inference from that decision is, that under those circumstances, neither of the corporations would have been liable for the debts of the other merely because of their identity of interest in the respects named above.

.The following statement is given of the rule with respect to liability of a new corporation for the debts of an old one:

"(1)   Where the circumstances are such as to warrant the 'conclusion that the former is not a separate and distinct corporation, but merely a continuation of the latter, and hence the same person in law; and (2) where it has in express terms or by reasonable implication assumed the debts of the old corporation." 10 Cyc. p. 287.

These two rules seem to be sustained by the authorities, and the last one has been expressly approved by this court. *Spear Mining Co.* v. *Shinn,* 93 Ark. 346. In that case, it was also held that under those circumstances, a creditor of the first corporation could maintain an action at law against the succeeding corporation which had, either by express terms of the contract or by reasonable implication, assumed payment of the liabilities.

The doctrine hereinbefore announced is approved by Mr. Thompson in his work on Corporations, Vol. 5 (2 ed.), section 6090.

The Supreme Court of Michigan, in the case of *Chase* v. *Michigan Telephone Co.,* 121 Mich. 631, 80 N. W.

717, stated the following rules covering the liability of corporations:

"Such obligations are assumed (1) when two or more corporations consolidate and form a new corporation, making no provision for the payment of the obligations of the old; (2) when, by agreement, express or implied, a purchasing corporation promises to pay the debts of the selling corporation; (3) when the new corporation is a mere continuance of the old; (4) when the sale is fraudulent, and the property of the old corporation, liable for its debts, can be followed into the hands of the purchaser."

To the same effect, see *Austin* v. *Bank,* 49 Neb. 412, 68 N. W. 628.

In *The Friedenwald Company* v. *Asheville Tobacco Works,* 117 N. C. 544, it was held that:

"Where a corporation engaged in business, transfers its entire property, rights and franchises to a new company incorporated and organized by the same stockholders and directors as the old, and the new company continues the business and adopts the contracts of its predecessor, the effect of such a merger is to create a novation so far as the creditors of the old company are concerned, and to substitute the new one as debtor."

Now, in this case the testimony is sufficient to warrant a finding that there was an express agreement on the part of the new corporation to discharge all liabilities of the old one, and certainly the testimony is sufficient to bring the case within the rules announced by this court in *Spear Mining Company* v. *Shinn, supra,* that one corporation may become liable for the debts of another where it has "by reasonable implication assumed the payment of the liabilities of the debtor corporation." It is unnecessary to repeat the various facts and circumstances which necessarily lead to the implication that it was intended for the new corporation to take the property of the old and discharge all the latter's obligations. The jury could have inferred as much from the testimony, and the court erred in taking that question from the jury.

The next question is, whether or not the plaintiff

made out a case of negligence against the Western Handle Company so as to entitle him to compensation for his injuries. At the time of the occurrence, he was a minor between seventeen and eighteen years of age. The company was operating a handle factory, and plaintiff was employed at the time as a helper to one of the men engaged in smoothing off the handles or "grinding" them, as it is expressed. The grinding was done by bringing the handle in contact with a rapidly moving belt, eight or ten feet in length, which was covered by sand glued to it. The handles, of different sizes and kinds, were brought from lathes in another room and placed near the belt where they were to be ground. In order to grind or polish the handles, they would be placed in contact with the moving belt. This was done by sticking one end in a wooden nose-piece on the end of an iron strap, which was controlled by the operator's foot on a pedal attached to the strap. In this way one end of the handle would be controlled by the action of the foot, and the operator would take hold of the other end with his hand. The handle would thus be drawn down so as to bring it in contact with the moving belt. The wooden nose-piece was bolted to the iron strap, and in the ordinary operation, the piece would frequently come in contact with the belt and wear off its surface. This made it necessary for the grinder to frequently put in a new nose-piece, and it was his duty to do this as well as to look after the movement of the belt and other things in connection with his work. Plaintiff was stooping down near the machine, picking up some handles which had been polished, as was his duty to do, and it is claimed that sand was caused to fly from the belt on account of negligence on the part of the grinder in permitting an exposed steel bolt or nut with a square shoulder to come in contact with the belt, and that the sand flew into one of plaintiff's eyes and severely injured it. At the time of the trial, he had lost the sight of the eye entirely. Negligence of Phillips, the grinder, is alleged in allowing the nose-piece to become so worn that it would not hold the handles securely, and that the steel bolt or nut was permitted to come in con-

tact with the belt. Negligence of the employer is also alleged in failing to give plaintiff warning and instruction as to his duty in avoiding sand flying from the belt.

Our conclusion is, that there was enough evidence to go to the jury on the question of negligence of Phillips in permitting the bolt or tap to come in contact with the belt, and that this caused the sand to fly from the belt in sufficient quantities to injure plaintiff's eye. The question is, by no means, free from doubt, but it is one, we think, peculiarly for the jury.

It is earnestly insisted by learned counsel for defendants that the testimony does not show definitely that it was sand that flew in plaintiff's eye, but that it was merely dust which necessarily flew from the wooden handles being polished. We think, however, that the testimony of plaintiff himself was sufficient to show that it was sand, and not dust, that flew into his eye; and, besides that, the injury was so severe and the pain so acute that it warranted the jury in drawing the inference that it was caused by sand, and not by dust.

Nor were the circumstances such as warranted the court in holding as a matter of law that plaintiff assumed the risks of this danger. It is true that sand would fly to some extent necessarily in the operation of the work of polishing the handles. This is shown by the fact that in something like a day's work, the sand belts would become smooth to the extent that the coat of sand would have to be renewed. In other words, the testimony shows that there was some sand flying from the belt all the time, but not to the extent, as plaintiff's testimony tended to show, when the steel bolt came in contact with the belt. In determining whether or not plaintiff assumed the risk of the danger from flying sand while he was stooping near the belt it was important for the jury to consider his age and intelligence, and the amount of experience he had had in that particular work. *Western Coal & Mining Co.* v. *Burns,* 84 Ark. 74; *Arkansas Midland Ry. Co.* v. *Worden,* 90 Ark. 407.

Our conclusion upon the whole case is, that there was enough evidence to go to the jury as to the liability

of all the defendants in this action, and that the court
erred in giving a peremptory instruction. Reversed and
remanded for a new trial.