D. W. BATES, Superintendent of Banking, v. MADISON COUNTY
SAVINGS BANK.

In re Claim of F. A. Lewis, Trustee, Claimant, Appellee; D. W.
Bates, Receiver of Madison County Savings Bank, Appellant.

No. 43403.

OCTOBER 20, 1936.

Edward L. O'Connor, Attorney General, Shirley A. Web-
ster and Clair E. Hamilton, for appellant.

W. T. Guiher and Daniel J. Gallery, for F. A. Lewis, trustee, appellee.

HAMILTON, J.—Briefly stated, the factual situation out of which this controversy arose is as follows:

By the last will and testament of W. H. Lewis, deceased, the Madison County State Bank of Winterset, Iowa, was named as trustee in a bequest of money for the benefit of his daughter, Lura M. Lewis. The bank qualified as trustee on February 23, 1929, and continued to act as trustee until April 19, 1934, when its successor, F. A. Lewis, was appointed. There was another banking institution in the town of Winterset, operating under the name of Winterset Savings Bank. For convenience these two banks will be referred to in this opinion as the State Bank and Savings Bank. On June 15, 1932, there was what is termed "a merger" of these two banks by way of the ordinary and familiar method, the State Bank by written agreement selling and transferring to the Savings Bank certain of its assets in consideration of the Savings Bank assuming certain deposit liabilities of the State Bank, the exact language in the agreement being: "The Winterset Savings Bank shall and does by these presents assume the payment of all existing liabilities to the depositors of the said Madison County State Bank as shown by the books and records of said bank. * * * It being the intention of all the parties to this agreement that the Winterset Savings Bank shall assume only the deposit liability of the Madison County State Bank as recited above. * * * The liability so assumed shall be payable according to the terms and provisions of said liability." The contract further provided that "all the right, title and interest" of the State Bank in and to all the assets sold and transferred to the Savings Bank should vest absolutely in the Savings Bank upon the signing of the agreement and delivery of said assets to the Savings Bank. The charter of the State Bank was to be delivered and surrendered to the Superintendent of Banking until "all the obligations of the said Madison County State Bank have been fully satisfied," the State Bank in the meantime relinquishing all its rights to continue a banking business. Provision was made for changing the name of the Winterset Savings Bank to the Madison County Savings Bank and for increasing the capital stock and surplus, the agreement expressly providing that it was entered into "as a

sale'' of the State Bank to the Savings Bank ''for the purpose of effecting a merger'' of the two institutions. Some of the men who had been active officers in the State Bank were elected to similar positions in the Savings Bank, and all of the officers of each and both banks found occupation either as officers or directors of the new Savings Bank.

In spite of the merger, the Savings Bank was not able to weather the storm of depression, and on January 27, 1933, it went under Senate File No. 111, Acts of the 45th General Assembly of the State of Iowa (chapter 156), and later on, to wit: January 10, 1935, into receivership, and D. W. Bates, Superintendent of Banking of the State of Iowa, was duly and regularly appointed receiver of said Madison County Savings Bank. Thereafter, on March 20, 1935, F. A. Lewis, Trustee of Lura M. Lewis under the will of W. H. Lewis, deceased, filed in connection with said receivership a claim in the amount of the balance as shown by the books of the bank on deposit in said trust account, to wit: $987.38, and asked that the same be allowed as a preferred claim. The receiver filed his report, allowing and classifying claims, and classified and allowed this claim as a general depositor's claim, in the sum of $984.97. To this report the claimant filed objections. Trial was had to the court, resulting in the court allowing said claim as a preferred claim, and from this order the receiver has appealed.

Upon the date of the merger, to wit: June 15, 1932, three separate bank statements were prepared, and these were introduced in evidence, one for the State Bank, one for the old Savings Bank, and a third combined statement of the accepted assets in both banks, as a basis for commencing business in the Savings Bank under its new name and style of Madison County Savings Bank, by which statement it is revealed that the combined cash assets of the two old institutions equalled exactly the cash item in the new. These bank statements disclosed that at the date of the merger the cash and cash items in the State Bank and its correspondent banks were $162,501.50, and the cash in the Winterset Savings Bank amounted to $11,254.11, while in the cash at the commencement of business of the Madison County Savings Bank, which was the Winterset Savings Bank under a new name, was $173,755.61. The evidence further shows that on January 27, 1933, at the time the Savings Bank passed under Senate File No. 111, it had cash on hand in the

sum of $16,575.98, and at the time the receiver was appointed for this bank, there was cash on hand in the sum of $28,294.73. The evidence fails to show the daily cash balance from the date the trust fund was placed in the State Bank to the date the receiver was appointed; but it is asserted by way of argument by appellee—and there is no claim on the part of appellant to the contrary—that at all times the cash balance far exceeded the amount of this trust fund. There is a concession in the record to the effect that on the date of the merger, to wit: June 15, 1932, there was on deposit in a savings account in the State Bank the sum of $978.38, which deposit was in the name of "Madison County State Bank as Trustee for Lura M. Lewis under the will of W. H. Lewis, deceased", and the further concession that after the merger the account was carried on the books of the newly organized institution under the same title, and the only additions made were an item of interest of $22.82 on November 1, 1932, and thereafter another item of interest of $10.00, and only one withdrawal, which withdrawal was in the sum of $26.23, being an overdraft in the checking account of this same Lewis trusteeship, and which was on April 17, 1933, offset against and deducted from this savings account. It should be kept in mind that the State Bank continued to act in the capacity of trustee for nearly two years after the merger.

██ Under this state of facts we think it clearly appears:

1. That the Madison County State Bank in its capacity as trustee deposited this trust fund in the Madison County State Bank in its capacity as a banking corporation, and that as such, under the provisions of chapter 416 of the Code of 1935 and more specially section 9290 of said chapter, this fund constituted a trust fund in the possession of the State Bank. Leach v. Farmers Sav. Bank of Hamburg, 205 Iowa 114, 213 N. W. 414, 217 N. W. 437, 56 A. L. R. 801; Andrew v. Farmers Sav. Bank of Odebolt, 208 Iowa 252, 225 N. W. 379.

2. That this trust fund was carried in the cash balance of the State Bank, and passed into and was carried in the cash balance at the commencement of business of the Madison County Savings Bank on June 15, 1932. It is true that no witness testified directly that the funds were mingled with those of the bank; but the concession hereinbefore referred to, coupled with the fact that the bank statements contain no reference to a separate cash account of trust funds in the bank, and with the further

fact that there is no claim as a matter of fact on the part of appellant that the amount of cash in this trust fund was carried in any other way, and the further fact that all of the records of the bank were in possession of the receiver,—and it is fair to assume that if the records had disclosed anything of this kind, the receiver would not be depending in argument upon presumption, but would have introduced in evidence such record—.establish quite conclusively that the trust funds were mingled with the cash in the bank.

■■■ 3. That the assumption agreement fairly interpreted includes not only general deposits but all depository obligations of the State Bank. Deposits in relation to banks are referred to in legal treatises and the decisions of the court as "general" and "special". 7 C. J., page 628, par. 304. Andrew v. Sac County State Bank, 205 Iowa 1248, 218 N. W. 24. And while strictly speaking, the latter are in their nature bailments, the depository bank being merely a bailee, nevertheless, such items are designated special deposits, and in this state by statute (section 9290) where the bank itself is acting as fiduciary and holds possession of trust funds it becomes a special deposit in said banking institution, and when the Winterset Savings Bank agreed to "assume the payment of all existing liabilities to the depositors" or "the deposit liability of the State Bank" this language is broad enough to include both general and special deposits.

In construing this contract we should keep in mind that it was entered into among bankers and most likely the form thereof was furnished by the appellant. At least we must assume that it was approved by the Superintendent of Banking at the time, and had the parties intended to limit the liability to general deposits only, and not include trust fund liabilities, it would have been an easy matter to have inserted the exception.

We should not lose sight of the fact that the State Bank occupied two distinct legal capacities. First, it was a testamentary trustee or fiduciary. It could act in this capacity by virtue of chapter 416 of our Code. Second, it was a banking corporation, engaged in doing a general banking business, and accepting deposits, and in its capacity as a banking institution it accepted a deposit from itself as trustee. It is the obligation of the State Bank as a banking corporation to return this money to the trustee that was assumed by the Savings Bank, not the personal liability of the State Bank in its capacity as testamentary trus-

tee. The Savings Bank never became the testamentary trustee, but the Savings Bank did assume and agree to pay whatever obligation the State Bank as a banking institution owed to the trustee, and that obligation was to return this special deposit and not permit the general depositors to share therein. This is on the theory that, technically, this trust fund never entered into the assets of the bank, but was kept separate, "earmarked", as it were. Therefore, the general creditors had no right to share therein, and the return thereof to the trustee would in no way harm the general depositors. And while, in actual practice, the money is not segregated and "earmarked" so that the specific money is capable of being returned, but is mingled with the cash of the bank, and therefore augments the amount of cash shown in the cash balance, and so long as there is sufficient cash traced into the hands of the receiver to pay the trust fund, the fact that the trust funds are mingled with the bank's funds will not prevent a recovery. This statement must, of course, be qualified to the extent that if there are not enough funds to pay the particular trust fund in full and all other trust funds of the same character, such balance must be prorated among all the preferred claimants. The right to recover such funds so commingled is based on the assumption that the trustee bank would spend its own funds before spending the trust funds.

It is only fair to assume that the officers of the Savings Bank checked over the deposit ledger before entering into the contract, and that the officers of said bank knew of this account in the name of the Madison County State Bank as Trustee, and they were therefore charged with knowledge of the statutory provisions relating to such accounts, and that by virtue of the statutes of this state this account was a trust fund.

Appellant's argument is largely based on presumptions of law. For instance, appellant argues from the use of the word "assets" in this agreement that it only included property to which the bank had title, and that under our statute, section 9290, the State Bank was required to keep this fund separate, and therefore, it is presumed that they did keep it separate, and that it was not in the cash balance that was turned over to the Savings Bank. However, presumptions disappear in the face of established facts. The bank statement showed the cash and cash items in the State Bank at the time of the merger, and the evidence clearly shows that this entire cash balance was in fact

transferred to the other bank, and along with the cash, of course, went the funds belonging to this trust, and it is presumed that the trust funds were retained and came into the hands of the receiver in case of insolvency. City of New Hampton v. Leach, 201 Iowa 316, 207 N. W. 348.

There is another weakness in appellant's argument. In the second division of appellant's affirmative argument for reversal, counsel argue that because of the fact that the record shows that interest was allowed on this deposit, the relationship of debtor and creditor existed, which, of course, presupposes the money is in the bank upon which the interest was calculated. Appellant cannot blow hot and cold at the same time. This being a trust fund deposited as an investment in a savings account, the trust being one of indefinite duration under the terms of the will, the fact that interest was allowed is not sufficient to change the character of the deposit, this being a trust created by statute.

Appellee could very easily have made the fact situation much less difficult had it been shown that the trust account was merely transferred from the books of the State Bank to the books of the Savings Bank in the same form and without any change, and that the cash constituting the trust fund was actually mingled with the funds in the bank, and that the trust funds were at no time withdrawn or segregated from the cash, but on the whole record we think it fairly appears that there was no such segregation and no change in the figures or amount of the trust account, for the balance remained the same from prior to the date of the merger until the receiver was appointed, with the exception of the additions of interest and the withdrawal item by offsetting the overdraft in the checking account against the savings account. This is the plain construction to be placed upon the stipulation of the parties which was dictated into the record in these words: ''It is further stipulated by and between the parties hereto that on June 15, 1932, being the date of the merger of the Madison County State Bank and the Winterset Savings Bank, under the terms of the written contract heretofore introduced in evidence, there was on deposit in the Madison County State Bank of Winterset, Iowa, under the name of Madison County State Bank, Trustee for Lura M. Lewis, under will of W. H. Lewis, the sum of $978.38. * * * It is stipulated and agreed between the parties that the deposit in the savings ac-

count of the Madison County State Bank, Trustee for Lura M. Lewis, under will of W. H. Lewis, on April 1, 1932 * * * was the sum of $978.38, and that there were no additions to said account or withdrawals therefrom at any time up to the time the said Madison County Savings Bank passed under Senate File 111, except the addition of $22.82 of interest on November 1, 1932, and $10.00 of interest credited after January 27, 1933, and except the sum of $26.23 withdrawn on account of an overdraft. * * *'' In connection with this stipulation there was offered in evidence without objection by the receiver, the savings ledger sheet of the Madison County Savings Bank, showing the savings account of the Madison County State Bank, Trustee for Lura M. Lewis, under will of W. H. Lewis, and which savings ledger showed a balance on January 27, 1933, of the sum of $1001.20 with accumulated interest thereon from November 1, 1932, to January 27, 1933, in the sum of $10.00, and contained the further showing of a withdrawal or offset of the sum of $26.23 on April 17, 1933. The stipulation further shows that on January 27, 1933, there was an overdraft of the said Lewis estate on its checking account carried in the Madison County Savings Bank in the sum of $26.23, which was offset against the savings account. It will be noticed that this record reveals that on April 1, 1932, which was before the merger, there was $978.38 in this trust account, which is the exact amount that was stipulated was there on June 15, 1932, the date of the merger. Apparently, the interest was calculated up to November 1, 1932, and the amount thereof was $22.82, which was added to the $978.38, together with another additional item of $10.00, interest figured from November 1, 1932, to the date the bank went under Senate File 111, making a total of $1011.20. Offset against this was the overdraft of $26.23, leaving a balance of $984.97. This plainly shows a continuous dealing with this account from the State Bank into the Savings Bank, overlapping from April, 1932, to the date the Savings Bank went under Senate File 111, and the conclusion is inevitable that the same identical account was simply transferred and continued to draw interest as if no transfer had been made.

While the fact situation could have been made more emphatic, we are constrained to hold that the record sufficiently supports the conclusion reached by the trial court. The record presents a rather intricate and difficult legal problem and pre-

sents a little different phase of the ever troublesome "preferential claim" question than has ever been passed upon by our court in the many times we have had this question of preference before us. But see, as bearing more or less upon the principles involved, Andrew v. Farmers Savings Bank of Goldfield, 207 Iowa 394, 223 N. W. 249; In re Receivership of Security Savings Bank, 205 Iowa 171, 217 N. W. 831; Andrew v. State Bank of New Hampton, 205 Iowa 1064, 217 N. W. 250; Leach v. Iowa State S. Bank, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728; Leach v. Beazley, 201 Iowa 337, 207 N. W. 374; Andrew v. Sac County State Bank, 205 Iowa 1248, 218 N. W. 24; Officer v. Officer, 120 Iowa 389, 94 N. W. 947, 98 Am. St. Rep. 365; Leach v. Farmers Savings Bank of Hamburg, 204 Iowa 1083, 216 N. W. 748, 65 A. L. R. 679; City of New Hampton v. Leach, 201 Iowa 316, 207 N. W. 348; Andrew v. Northwest Davenport Savings Bank, 217 Iowa 780, 253 N. W. 133; Leach v. Grinnell Savings Bank, 205 Iowa 1345, 219 N. W. 483; In re Assignment of Knapp & Co., 101 Iowa 488, 70 N. W. 626; Andrew v. Farmers State Bank of Lamont, 217 Iowa 69, 251 N. W. 23; Bates v. Winfield State Bank, 219 Iowa 258, 257 N. W. 806; In re Estate of Rorick, 218 Iowa 107, 253 N. W. 916; Leach v. Stockport Savings Bank, 207 Iowa 478, 223 N. W. 171. See, also, extended annotations in 26 A. L. R. 3; 35 A. L. R. 747; 55 A. L. R. 1275; 102 A. L. R. 372; and 37 A. L. R. 120; 56 A. L. R. 806.

The order of the trial court in granting preference is affirmed.—Affirmed.

PARSONS, C. J., and KINTZINGER, STIGER, DONEGAN, and MITCHELL, JJ., concur.