LOGAN BLIZZARD et al., appellants, v. FIRST STATE SAVINGS BANK, McGREGOR, appellee.

No. 48008.

(Reported in 53 N.W. 2d 240)

MAY 6, 1952.

J. J. Hyde, of Elkader, for appellants.

L. J. Ehrhardt, of Elkader, Elwood, Lyons & Elwood, of Cresco, and Miller, Davis, Hise & Howland, of Des Moines, for appellee.

BLISS, J.—Since the action was disposed of on the pleadings, without the introduction of any evidence, the facts must be de-

termined from the petition and its amendments and the exhibits attached to and a part of them. The petition of plaintiffs and its amendments and the multiple and alternative motions attacking them are too long to set out, and it is difficult to make a concise summary of them. The matters involved arose in early 1933 during the "Bank Holiday" period. The State Bank of McGregor, on or about March 3, 1933, was closed by proclamation of Lieutenant Governor Kraschel, and thereafter certain conditions were prescribed for reopening the bank, but owing to its insolvency it could not meet the conditions and remained closed. The Marquette Savings Bank of Clayton County, Iowa, was also closed, apparently by the same proclamation. It was also insolvent. The First National Bank of McGregor was closed at about the same time by order of the National Government. It was also insolvent.

On or about January 23, 1933, Senate File 111 (chapter 156 of the Laws of the Forty-fifth General Assembly) went into effect by publication. Senate File 111 is now section 528.90 et seq., Code, 1950. It was entitled an Act "extending the right of the superintendent of banking to take possession of banking institutions without insolvency proceedings and to protect the debtors and creditors of such institutions and to reorganize or operate the same * * *."

The petition alleged that since the said three banks were insolvent and had not reopened because of inability to meet the conditions prescribed, the officers of the banks called a meeting of their depositors and proposed to them "that in order to permit the reopening of said State Bank of McGregor and the other two banks it would be necessary for the banks to reorganize under the provisions of Senate File 111 * * * and for the depositors of said State Bank of McGregor to waive their right to demand fifty per cent of their deposits in said bank and assign said fifty per cent * * * to named trustees for the purpose of purchase by said trustees from said State Bank of McGregor, the least desirable assets of said bank." It was also alleged that it was represented to the depositors of the State Bank of McGregor that the remaining best and most liquid assets would be used, along with similar assets of the other two banks, to form a new bank which would be known as the First State Savings Bank, McGregor, Iowa, and

would use the charter of the Marquette Savings Bank, and that all future net earnings of the proposed new bank, if any, should be paid annually to the aforesaid trustees until all the deposits segregated in their hands should be paid in full to each depositor, and that no dividends would be paid to the stockholders of the proposed new bank until such deposits were paid in full. The depositors' trust agreement was not agreed upon at this first meeting.

It was alleged that there was a second meeting of the depositors and the officers of the three banks on March 23, 1933, at which time a depositors' agreement was signed by fifty per cent of the depositors of the State Bank of McGregor with more than seventy-five per cent of the total deposits, under the provisions of section 4 of said Senate File 111 of the Forty-fifth General Assembly, which agreement was approved by the superintendent of banking and the executive council of the state of Iowa, as required by statute.

A copy of this agreement, marked Exhibit A, was attached to and a part of plaintiffs' petition. Omitting parts not material to this appeal, it was as follows:

"Depositor's Agreement

"With the State Bank of McGregor, Iowa, March 23, 1933.

"I, the undersigned, a depositor of the above named bank, recognizing the unusual economic and business conditions * * * and desiring the continuity and maintenance of said bank, and in consideration of similar agreements signed * * * by other depositors, do hereby agree with said bank * * * for all deposits in said bank that I own or control * * *:

"(a) To allow 50 per cent of all my said deposits in said bank to remain on deposit under all the conditions as to interest rate and withdrawal that existed with regard to them on March 3, 1933.

"(b) I hereby assign * * * the other 50 per cent of all such deposits and accrued interest thereon, to the trustees named below, in trust * * * for the purchase from said bank, without recourse, of an equal amount of the active assets * * * to be selected by the Board of Directors * * * as being the least desirable of those now held by said bank; and

"(c) It is further understood and agreed: * * * (3) *that all future net earnings of the bank * * *, if any, shall be paid annually to said trustees until all deposits * * * not in the bank, and in the hands of the trustees, are paid in full to each depositor, and that no dividend shall be paid to stockholders on the stock of said bank until said deposits are so fully paid.*
   "(Signed) .................."

(The italics are ours and are for reference purposes only.)

A separate instrument was apparently made for each depositor. He alone signed it. It was not signed by the State Bank of McGregor nor by any of its officers. It was not signed by defendant-bank, for it was not in existence on March 23, 1933. As recited in the instrument the depositors executed it "desiring the continuity and maintenance of said bank." No doubt the officers of the bank had the same desire. There is no allegation in the petition, or its amendments, that anyone connected with the bank acted with fraudulent intent. But, regardless of the desires of the depositors or of the officers, "the continuity and maintenance" of the State Bank of McGregor ceased, for the petition recited that though the depositors' agreement was approved by the proper state officers and "though so reorganized, the said bank remained insolvent and was not permitted to reopen again." Through no fault of its own the State Bank of McGregor never did function again as a bank. It was never possible for it to make a profit or to acquire any surplus or net earnings for delivery to the trustees. In fact, as alleged in the petition, the designated trustees refused to act, and on May 4, 1933, the court appointed A. J. Cords, as successor-trustee, who qualified and accepted the trust property from the State Bank of McGregor, and served as liquidating agent of the one half of the deposits in the sum of $101,406.25 which the depositors authorized the State Bank of McGregor to assign and deliver to the trustees. Mr. Cords, as successor-trustee, through liquidation of the trust assets, realized sufficient cash to pay a dividend of five per cent or $5070.04, leaving cash on hand of $736.25 on February 14, 1934, when the court approved his final report and accepted his resignation. Logan Blizzard, one of the plaintiffs, was then appointed successor-trustee. He qualified on March 24,

1934, and continued as trustee until October 1, 1937, when he resigned, and the remaining assets of the depositors' trust were placed in the hands of D. W. Bates, State Superintendent of Banking, for final liquidation, as receiver. During his receivership he paid the depositors $5374.12, leaving a balance of unpaid deposit claims of $95,167.74 as of June 6, 1941, the date of his final report, which was approved by the court on June 16, 1941. The liquidation of these trusteed assets was thereby terminated, and the petition so alleged.

The petition further alleged:

"Paragraph VI. That thereafter, and on or about May 4, 1933, the said three banks * * * *merged and consolidated, the Marquette Savings Bank * * * absorbing the other two banks,* and a copy of said *merger* or purchase agreement is hereto attached, marked Exhibit 'B', and hereby made a part hereof.

"Paragraph VII. *That by virtue of the said consolidation and merger, the Marquette Savings Bank * * *, thereafter named the First State Savings Bank* and defendant herein, purchased the assets of the other two banks and *assumed their liabilities which included the obligations of said banks to the depositors-claimants of said State Bank of McGregor and First National Bank of McGregor under the terms of the aforesaid depositor's agreements;* that said sale and purchase of assets occurred while said State Bank of McGregor was insolvent.

"Paragraph VIII. That at this second meeting of depositors of the aforesaid three banks * * * officers of these said banks who later became officers and/or directors of the present First State Savings Bank of McGregor, *which resulted from the merger and consolidation of said banks,* stated and represented to the plaintiffs, the depositors of the State Bank of McGregor, that Paragraph (3) of the depositor's agreement, as aforesaid [this is paragraph of Exhibit A, supra, which we italicized], would be honored and carried out by the defendant herein, the new bank *which resulted from the merger and consolidation of the three banks* * * * and which used the charter of the Marquette Savings Bank * * * and thereafter changed its name to First State Savings Bank; *that such merger and consolidation was had* despite the prohibitive provisions of the said depositors' agreements providing for the continuity and maintenance of said

State Bank of McGregor." (The italics in Paragraphs VI, VII and VIII are ours and are for reference purposes only.)

The so-called merger agreement, referred to as Exhibit B in Paragraph VI of the petition, set out above, was made part of the petition. We incorporate so much of said exhibit as is pertinent to the appeal, to wit:

"This agreement made * * * this 4th day of May, 1933, by and between the State Bank of McGregor * * * hereinafter designated as the selling bank, and the Marquette Savings Bank * * * hereinafter designated as the purchasing bank.

"WITNESSETH: That said selling bank * * * does hereby agree to sell, assign and transfer to the purchasing bank certain of its assets in the sum total of $146,792.76, a list of said assets being hereto attached marked Exhibit 'A' * * * the same to be transferred and assigned in writing by the selling bank, without recourse on them, to wit: [describing the assets].

"The purchasing bank, in consideration of said * * * assets * * * *agrees to assume the payment of 50% of all the existing liability to the depositors of the said State Bank of McGregor in accordance with certain Depositor's Agreements dated March 23, 1933, including interest on the* same, such liability being set out in Exhibit 'B', and itemized in detail by the books of said selling bank, the total of all deposits so assumed being in the amount of $121,792.76. The said purchasing bank also assumes and agrees to pay the Bills Payable Notes in the aggregate amount of $25,000 to the Reconstruction Finance Corporation * * *.

"It is expressly agreed and understood by and between the parties hereto that the purchasing bank does not assume liability for any unpaid and outstanding taxes, current expenses, etc.; it being the intention of all of the parties to this agreement that the said purchasing bank shall assume only the 50% of deposit liabilities of the said State Bank of McGregor as recited herein. * * *

"As a part of the consideration of this contract, it is * * * agreed * * * that the said selling bank shall surrender its physical charter to be held in escrow by the superintendent of banking, who is hereby authorized and directed to proceed with the dis-

solution of the selling bank, and the selling bank agrees to join in any proceeding of said dissolution, it being the intention that the selling bank does hereby relinquish its right to conduct a banking business under the above mentioned charter. * * *

"All of the remaining assets of the State Bank of McGregor not purchased by the Marquette Savings Bank under this contract are hereby segregated and set over to A. J. Cords as liquidating agent for the said * * * trustees * * * under a certain depositor's agreement dated March 23, 1933."

The instrument was executed by the two participating banks by the directors of each bank, after authorization by resolution of the Board of Directors of the Marquette Savings Bank, and by a stockholders' agreement executed by owners of more than seventy-five per cent of the capital stock of the State Bank of McGregor.

The contract was made a part of the minutes of the board meeting of the Marquette Savings Bank, held at 8 p.m. on May 4, 1933, the resolution adopted being:

"WHEREAS, certain negotiations have been pending which involve the purchase of the assets of the State Bank of McGregor * * * and the assumption of certain deposits and bills payable, and

"WHEREAS, after a thorough investigation by this Board of Directors, it has been found that they will be best serving the interest of all concerned by making such purchase and assuming such liabilities,

"Now THEREFORE BE IT RESOLVED that this Board of Directors enter into a contract with the State Bank of McGregor, Iowa, for the purchase of certain of its assets and the assumption of certain of its liabilities as shown by its books * * *."

The Exhibit B mentioned in and attached to the contract, Exhibit B, attached to plaintiffs' petition, is an alphabetical list of the depositors of the State Bank of McGregor with the deposit of each, the payment of which was assumed by the Marquette Savings Bank. This exhibit and the authorizing resolutions of the selling and purchasing banks get into the record in the amendments to the petition.

In Paragraph XV of the petition it is alleged that the de-

fendant became a going institution and opened for business on May 15, 1933. It has continued to operate. F. S. Richards, cashier and director of the State Bank of McGregor, became the first president of the defendant; E. L. Langlie and G. H. Dahmen, directors of the Marquette Savings Bank, became directors of the defendant; Gilbert N. Meyer, director of the First National Bank of McGregor, became a director of defendant, and is now its president; and J. A. Ramage, cashier of the State Bank of McGregor, became assistant cashier of defendant.

In Paragraphs XVI, XVII, XVIII and XIX of the petition plaintiffs alleged that defendant assumed the obligation and performance of paragraph (c) (3) of Exhibit A, and that it breached this obligation on or about 1946 and in the years 1947, 1948, 1949 and 1950 by failing to pay the dividends, exceeding five per cent or more annually earned on its stock in said years, to the trustees named in Exhibit A, or to their successors in interest, or to the plaintiffs, although the deposits so trusteed and unpaid amounted to more than $95,167.74, but instead paid such dividends to its stockholders, to the damage of the plaintiffs, the depositors-claimants of said Depositors Trust.

The foregoing comprise all allegations in the petition and its amendments that are material to the appeal.

Defendant's motion to dismiss was in three divisions, the second and third being for submission only in the event of a ruling adverse to defendant on the preceding division. Division one was in three paragraphs, the first of which alleged that the petition as amended did not state a cause of action entitling plaintiffs to any relief, since plaintiffs' pleading on its face showed that the defendant never obligated itself in any way to pay any part of deposits which had been assigned to the trustees, nor to deliver to said trustees any of its net earnings for the liquidation of any part of said trusteed deposits. The second and third paragraphs of division one respectively alleged the bar of laches, and the bar of the statute of limitations, to any recovery.

The trial court sustained the first division of the motion and held that the amended petition did not plead a cause of action, and that if there had been liability on the part of the defendant the laches of plaintiffs would have barred any recovery.

I. Plaintiffs state their cause thus: "Plaintiffs' suit is to recover either under the express assumption of liability of the terms of the merger or purchase and sale agreement, Exhibit 'B', or to recover against the merged corporation by operation of the rules of law imposing liability for the obligations of one of the constituent corporations."

Neither theory of recovery, in our judgment, is tenable. The object of the deposit-waiver plan, evidenced by Exhibit A, was to make it possible to reopen the State Bank of McGregor and to continue it in operation. Neither the depositors nor those operating the bank knew whether this could be effected or not, but they hoped that under the provisions of Senate File 111 it might be accomplished. All of them knew that such a result was necessary if any part of the deposits was to be paid by future earnings of the bank. The banking department refused to permit the bank to reopen. A reason for the refusal may have been that such use of the bank's earnings would have defeated any benefits accruing to the bank from the waiver plan. It was closed because it could not pay its obligations one hundred per cent. Exhibit A reimposed that burden upon it with respect to deposit obligations. The refusal of the banking department to allow the bank to reopen nullified the proposal in Exhibit A for the payment of any of the deposits in the control of the trustees out of net earnings of the State Bank of McGregor.

The defendant, First State Savings Bank, never directly or indirectly agreed to pay, nor assumed any obligation to pay, any of the trusteed deposits out of its future earnings. The averment in the amended petition that it had so agreed or so assumed is definitely refuted on the face of the pleading.

The superintendent of banking had broad powers under Senate File 111. He might reopen the closed insolvent bank by the adoption of a plan whereby the depositors voluntarily placed a portion of their deposits with trustees as liquidating agents. He might wind up its affairs, or supervise its operation, or reorganize it. Apparently with respect to the Marquette Savings Bank and the State Bank of McGregor he decided upon a reorganization. Nothing had been done toward carrying out the provisions of Exhibit A. The State Bank of McGregor remained closed. The deposit-waiver agreements were executed on March

23, 1933, but the three trustees designated in the agreements refused to accept the trust and act as trustees. The superintendent then proceeded with the reorganization, and on May 4, 1933, the sale agreement, Exhibit B, was executed whereby the State Bank of McGregor sold certain of its assets to the value of $146,-792.76 to the Marquette Savings Bank, as purchaser, and in consideration therefor the latter assumed the payment of fifty per cent of all the existing liability of the State Bank of McGregor to its depositors in the sum of $121,792.76, and also promissory notes of the State Bank of McGregor payable to the Reconstruction Finance Corporation in the amount of $25,000, or a total assumed obligation of $146,792.76, which was the exact value of the assets the Marquette Savings Bank received. In other words, it paid one dollar for every dollar of assets which it received. By the same agreement, Exhibit B, it was expressly provided that "All of the remaining assets of the State Bank of McGregor not purchased by the Marquette Savings Bank under this contract are hereby segregated and set over to A. J. Cords as liquidating agent * * *." On May 4, 1933, the date of the execution of Exhibit B, the court appointed A. J. Cords and he qualified on June 19, 1933. It thus appears that Exhibit A performed no function with respect to the disposition of the assets and the deposits of the State Bank of McGregor, but was superseded in all such matters by Exhibit B.

There is nothing in Exhibit B obligating the defendant to use any of its net earnings to pay any of the trusteed deposits of the State Bank of McGregor. On the contrary it specifically provided as follows: "* * *; it being the intention of all of the parties to this agreement that the said purchasing bank shall assume only the 50% of deposit liabilities of the said State Bank of McGregor as recited herein." Plaintiffs rely upon another passage as establishing the assumed liability of the defendant, to wit: "The purchasing bank, in consideration of said assignment of assets by selling bank * * * agrees to assume the payment of 50% of all the existing liability to the depositors of the said State Bank of McGregor *in accordance with certain Depositor's Agreements dated March 23, 1933.*" They rely on the italicized words. But these refer to paragraph "(a)" in Exhibit

A, which designated the fifty per cent of deposits paid in full, and not to the fifty per cent which were placed in trust.

When plaintiffs' amended petition is viewed and considered in all its parts there is no proper pleading or allegation of fact that either the Marquette Savings Bank, or the defendant, obligated itself to apply any net earnings to the payment of the trusteed deposits. As a matter of fact, the defendant never executed Exhibit A or Exhibit B, but we are considering it as succeeding to the rights and liabilities of the Marquette Savings Bank under whose charter it was organized.

II. The second or alternative theory of recovery proposed by plaintiffs is that the defendant was the result of a merger or consolidation of the three banks, and that having received the assets it assumed the liabilities of the constituent corporations by either express or implied contract. In support of this contention plaintiffs cite 13 Am. Jur., Corporations, section 1237, page 1125; Union Pac. Ry. Co. v. McAlpine, 129 U. S. 305, 9 S. Ct. 286, 32 L. Ed. 673; Bates v. Madison County Sav. Bk., 222 Iowa 370, 269 N.W. 341; Good v. Ferguson & Wheeler Land Co., 107 Ark. 118, 153 S.W. 1107, Ann. Cas. 1915A 544; Northwest Perfection Tire Co. v. Perfection Tire Corp., 125 Wash. 84, 215 P. 360.

To this contention the defendant asserts that the allegations of merger in Paragraphs VI, VII and VIII of the petitions, which we have italicized, are merely conclusions and are not proper pleading of the fact, which is not therefore admitted by the motion to dismiss. This rule is well established. Townsend v. Armstrong, 220 Iowa 396, 398, 260 N.W. 17; Evans v. Herbranson, 241 Iowa 268, 282, 41 N.W.2d 113, 15 A. L. R.2d 925; In re Estate of Rule, 178 Iowa 184, 193, 194, 159 N.W. 699. But if it be conceded that this rule does not apply in this instance, we think the fact is not well pleaded because other allegations clearly state that there was no merger or consolidation, since Exhibit B, on which plaintiffs rely to show the merger and consolidation, was, in fact, but a sale and purchase agreement, and provided for the dissolution of the State Bank of McGregor instead of its merger and consolidation. To this argument plaintiffs reply that a merger may be in the form of a sale and purchase of assets. 13 Am. Jur., Corporations, section 1245; Bates v. Madison Coun-

tỹ Sav. Bk., 222 Iowa 370, 269 N.W. 341; 3 Mitchie on Banks and Banking 44, section 13(b).

But if, for the purpose of argument, every legal contention of plaintiffs be conceded, and it be conceded that the defendant came into existence as a result of a merger or consolidation, there is no merit to plaintiffs' second theory of recovery. For Exhibit B expressly limits the deposit liability to fifty per cent of the amount of the total deposits, and that liability cannot be increased by implied contract when there is an express contract to the contrary.

III. The oral representations on which plaintiffs rely were a part of the discussions preceding the execution of Exhibit A and could not vary the provisions of Exhibit B, executed long after, nor bind the parties to it.

It is not necessary to discuss or pass upon other propositions urged by the parties. The plaintiffs have pleaded no case entitling them to recover, and the equities appear to be all against the plaintiffs. Any loss suffered by the plaintiffs was caused solely by the insolvency of the bank in which they placed their deposits, and not through anything done or omitted by the defendant or the other banks. The defendant did not receive anything from the State Bank of McGregor for which it did not pay full value. It paid fifty per cent of plaintiffs' deposits and in the liquidation of the trusteed assets they received all that could be reasonably realized from them.

The decree of the district court is—Affirmed.

All JUSTICES concur.