Estate of William P. Eger, Deceased, Erma C. Eger, Executrix of Said Estate, v. Commissioner.
Estate of William P. Eger v. Commissioner
Docket No. 4626.
United States Tax Court
1945 Tax Ct. Memo LEXIS 72; 4 T.C.M. (CCH) 914; T.C.M. (RIA) 45303; September 28, 1945
Henry A. Kalcheim, Esq., 180 W. Washington St., Chicago, Ill., Thomas L. Tallentire, Esq., and Edward R. Dorr, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined deficiencies in income tax of $1,178.05 and $3,306.80 for the calendar years 1940 and 1941, respectively. The issues *73 are: (a) whether respondent in determining the deficiencies erred in his inclusion in gross income of the decedent for those years income received by 5 trusts created for the benefit of his 4 children; and (b) did respondent err by including in the income of decedent, as salary, certain sums designated as "Allocation A Distribution" and paid by Cincinnati Stamping Company, an alleged partnership. Findings of Fact Petitioner's decedent, William P. Eger, died February 26, 1942, a resident of Convington, Kentucky. His returns for the taxable years here involved were filed with the collector of internal revenue for the district of Kentucky at Louisville, Kentucky. On February 1, 1937, the said William P. Eger executed 4 trust agreements, naming his wife, Erma C. Eger, as trustee in each. Under each trust one of his 4 children was named as beneficiary. The corpus of each trust was 70 shares of common stock of The Cincinnati Stamping Company, a corporation, actively engaged in the metal fabricating business and with which decedent had for some years been connected. All of the 4 trust instruments were identical in their wording. The instrument naming the decedent's eldest son, William *74 A. Eger, reads as follows: "TRUST AGREEMENT" "THE AGREEMENT made and entered into as of the 1st day of February, 1937, between William P. Eger of the City of Cincinnati and State of Ohio, hereinafter called the Settlor, and Erma C. Eger, hereinafter called the Trustee. "WITNESSETH: That the Settlor in consideration of the sum of One Dollar ($1.00) to him paid by said Trustee, receipt of which is hereby acknowledged, and in further consideration of the agreement on the part of said Trustee to accept and perform the trusts hereinafter created, does hereby assign, transfer and deliver unto said Trustee, the following securities and personal property: "70 Shares Common Capital Stock of The Cincinnati Stamping Company. "TO HAVE AND TO HOLD the same to the same Trustee and her successor as hereinafter provided, in trust nevertheless, and for the following uses and purposes and with the following powers to wit: "1. All the income of the above described property or of and property placed in its stead, either by the sale or exchange of said securities or any other investment made of the proceeds arising out of the sale or exchange, or any other disposition of said securities, shall *75 be paid to William A. Eger, throughout his natural life, until he shall attain the age of twenty-one (21) years, upon which date the trust shall terminate and the corpus thereof shall be transferred and/or conveyed unto William A. Eger or the heirs of his body, absolutely and in fee simple. "2. Should the said William A. Eger die before he shall have attained the age of twenty-one (21) years, this trust shall continue and the income thereof shall be paid to Marie Agnes Eger, Donald L. Eger, Shirley H. Eger, or to the heirs of their bodies, until they shall attain the age of twenty-one (21) years upon which date this trust shall terminate and the corpus thereof shall be transferred and conveyed to said Marie Agnes Eger, Donald L. Eger, Shirley H. Eger, or the heirs of their bodies, share and share alike, absolutely and in fee simple. "3. Said Trustee shall hold, manage and control such property during the life of this trust with power to sell, transfer, assign and deliver the same with full power to invest and reinvest the principal thereof, with like power over all investments which investments or reinvestments may be made by said Trustee in her sole discretion without limitation *76 to such investments as may be by law designated proper investments for Trustees. "4. Said Trustee shall have full power in converting personalty into realty and realty into personalty; to vote debentures; to consent to consolidations and reorganizations, to exercise subscription rights and all other rights arising out of the ownership of said securities; and to execute and deliver all proxies, powers of attorney and agreements which she may deem necessary and advisable in the administration of this trust. "5. Receipts signed by said Trustee for any monies or other property delivered to her shall at all times be sufficient to discharge the person or persons delivering same from all further accountability for such property, and no person, corporation or transfer agent dealing with said Trustees as to matters purporting to affect the trust estate shall be required or concerned to inquire as to such transactions nor as to the disposition of the proceeds thereof. "6. Should said Trustee die prior to the termination of this trust, Robert F. Eger shall serve as such Trustee for the remainder of the term of this trust. "7. Any distribution of principal provided for herein may be made *77 either in cash or in securities or in both in the sole discretion of the Trustee, and such distribution is to be made at such values as said Trustee may determine. "8. The Trustee shall not be required to set aside any sinking fund to absorb losses incurred upon sales or premiums paid upon purchases or for any other purposes. The Trustee shall have full power to determine what shall be considered corpus and what income of this trust. "9. The Trustee shall not be held accountable for any errors of judgment but shall be liable only for gross negligence or wilfull default in the administration of this estate. "10. This trust is hereby declared to be irrevocable and the Settlor hereby fully and completely releases, transfers and assigns the property herein described to the Trustee herein named and her successor, without any right, power or authority in any way to cancel, revoke, or alter the transfer, conveyance or assignment herein referred to or any of the terms of this trust agreement. "IN WITNESS WHEREOF, hereto and to a duplicate hereof, said William P. Eger of the City of Cincinnati and State of Ohio has set his hand and to show her acceptance of said trust, her agreement *78 to perform the same and her receipt of the aforesaid property, the said Erma C. Eger, as Trustee have caused their names to be signed hereto and to a duplicate hereof the day and hereinbefore written. "(SIGNED) WILLIAM P. EGER, Settlor. "(SIGNED) ERMA C. EGER, Trustee." On August 1, 1940, Erma C. Eger, wife of the decedent, executed a trust agreement naming the decedent as trustee and their 4 children, William Arthur Eger, Marie Agnes Eger, Shirley Helen Eger and Donald Lewis Eger, as beneficiaries. The corpus of this trust was $100. The instrument, together with certain endorsements thereon made after the death of the decedent, reads as follows: "TRUST AGREEMENT" "THIS AGREEMENT made and entered into on the 1st day of August, 1940 between Erma C. Eger of the State of Ohio, hereinafter called the Settlor, and William P. Eger, hereinafter called the Trustee, "WITNESSETH: That the Settlor, in consideration of the sum of One Dollar ($1.00) to him paid by the said Trustee, receipt of which is hereby acknowledged, and in further consideration of the agreement on the part of said Trustee to accept and perform the trusts hereinafter created, does hereby deliver, transfer and pay *79 over unto said Trustee the sum of One Hundred Dollars ($100.00). "TO HAVE AND TO HOLD the same to the said Trustee and his successors, in trust nevertheless, for the following uses and purposes and with the following powers, to-wit: "1. All and any of the income derived from the investment of said sum after the payment of all expense of this Trust is to be paid to William Arthur Eger, Marie Agnes Eger, Shirley Helen, Eger, and Donald Lewis Eger, as and when necessary for the same, at the discretion of the Trustee. Should any of said named persons die, prior to the termination hereof, without issue of the body surviving, the share of such deceased person shall be equally distributed to the survivors, share and share alike, or to the heirs of the body of any deceased party, per stirpes. "2. This Trust shall continue and remain in full force and effect until the 18th day of February, 1951, at which time and upon which date it shall cease and terminate, and, thereupon, the Trustee shall transfer, assign, convey, deliver and/or pay over unto William Arthur Eger, Marie Agnes Eger, Shirley Helen Eger, and Donald Lewis Eger, in equal shares, or to the heirs of the body of any of said *80 parties who may be deceased, per stirpes, all of the corpus of this Trust then remaining in said Trustee's hands. Should any of said named persons die, prior to the termination hereof, without issue of the body surviving, the share of such deceased person shall be equally distributed to the survivors, share and share alike, or to the heirs of the body of any deceased party, per stirpes. "3. The Trustee shall hold, manage and control such sum, or any and all investments or interests purchased with the same, and shall have full power as such Trustee, to enter into associations, partnerships, firms and other business ventures, to purchase corporate stock or other securities, to purchase and hold real estate, and with like power over all investments and reinvestments which may be made by said Trustee, in his sole discretion, without limitation to such investments as may be by law designated as proper investments for Trustees. "4. The said Trustee shall have full power to convert real estate into personalty and personalty into realty and to exercise all rights arising out of the ownership of said real estate or personalty and to do all things which he may deem necessary and advisable *81 in the administration of this Trust. "5. Receipts signed by the Trustee for any monies or other property delivered to him shall at all times be sufficient to discharge the person or persons delivering same from all further accountability for such property and no person, firm or corporation dealing with said Trustees as to matters purporting to affect the trust estate shall be concerned or required to inquire as to such transaction nor as to the disposition of the proceeds thereof. "6. The Trustee shall not be required to set aside any sinking fund to absorb losses incurred or for any other purpose, and he shall have full power to determine what shall be considered corpus and what income of this trust. "7. The Trustee shall not be held accountable for any errors of judgment but shall be liable only for gross negligence or wilful default in the administration of this trust. "8. The Trustee, or his successors, in trust, shall be compensated for his services as such Trustee, from the income of this Trust, in the sum of Four Thousand ($4,000.00) Dollars per year and such compensation shall be a first charge upon such income. "9. Should the Trustee named herein die prior to the *82 termination of this Trust, the Settlor, Erma C. Eger, shall serve in the capacity of Trustee until this Trust is terminated. Should the settlor predecease the termination of this Trust, the Trustee shall have the right to name a Trustee to succeed him as Trustee, by Will. Should the Settlor serve as Trustee under this provision she shall have the right to name a trustee to succeed her, by Will. "10. This Trust is hereby declared to be irrevocable and the Settlor hereby fully and completely releases and delivers the property herein described to the Trustee herein named without any right, power or authority in any way to cancel, revoke or alter the transfer herein referred to, or any of the terms of this trust agreement. "IN WITNESSETH WHEREOF, hereto and to duplicate hereof, said Erma C. Eger of the City of Cincinnati and State of Ohio, has set her hand and, to show his acceptance of said trust, his agreement to perform the same and the delivery of the said sum to him, the said William P. Eger, as Trustee, have caused their names to be signed hereto and to a duplicate hereof, the day and year hereinbefore written. "(SIGNED) ERMA C. EGER, Settlor "(SIGNED) WILLIAM P. EGER, Trustee. *83 "In the presence of: "(SIGNED) RALPH E. GRIMME "(@SIGNED) JEROME STANBACH Cincinnati, Ohio, March 6, 1942. "The trusteeship of William P. Eger having terminated by reason of his death February 26, 1942, the undersigned, Erma C. Eger, hereby waives the right to serve in the capacity of Trustee in the place of William P. Eger, and hereby nominates and appoints to serve as Trustee, William A. Eger, 18 Park Avenue, Elsmere, Kentucky, from this date, but because he will not attain the age of 21 years until May 23, 1942, I hereby also nominate and appoint as co-trustee to serve until he becomes 21 years of age, John G. Schroer, Box 162, Kenwood Road, Cincinnati, Ohio; both trustees to serve without compensation. "(SIGNED) ERMA C. EGER "Witnesses: "We, the undersigned, William A. Eger and John G. Schroer, hereby accept the above appointment as Trustee in lieu of William P. Eger, as hereinbefore stated, and agree to serve without compensation therefor; it being understood that trusteeship of John G. Schroer shall terminate on May 24, 1942, when said William A. Eger attains 21 years of age. "(SIGNED) WILLIAM A. EGER "(SIGNED) JOHN G. SCHROER "May 24, 1942. "I, *84 William A. Eger, hereby ratify and confirm my acceptance of the trusteeship hereinbefore mentioned, which has heretofore been made prior to my arriving at the age of majority. (SIGNED) WILLIAM A. EGER." Upon execution of the trust agreement of August 1, 1940, the decedent, as trustee, entered into a so-called partnership agreement with Ralph E. Grimme, acting as trustee of a similar trust created by his wife in favor of his children and with a like corpus of $100, John G. Schroer, manager of a trust created for the benefit of himself and wife, Albert Hoersting and Eleanor Sherman, as trustees for the "Hoersting Family Trust" and George A. Wimmer, an individual. The contribution of each of the trusts and the individual to the so-called partnership was the sum of $100. This so-called partnership was organized to take over the assets and business of The Cincinnati Stamping Company, substantially all of the stock of which was owned by these individuals or by the trusts created by them. Upon its organization the so-called partnership acquired the business of The Cincinnati Stamping Company, including its inventory and accounts receivable. Certain of its equipment was taken under lease *85 at a yearly rental for a term of years with an option to purchase. The consideration agreed to be paid by the so-called partnership for the assets and business acquired was $6,955.44, together with $80,000 of its 4% debenture bonds. The trust indenture securing these bonds provided specifically that the interest was payable only from earnings and that the so-called partners should not be personally liable for the obligation but the bonds were enforceable only against partnership property. Five individuals, Ralph E. Grimme, George A. Wimmer, John G. Schroer, William P. Eger, the decedent herein, and Albert Hoersting had been the officers and/or employees of The Cincinnati Stamping Company and the active operators of the business prior to its qcquisition by the so-called partnership and the latter took the name Cincinnati Stamping Company, merely eliminating the word "The" in the name under which the corporation operated. Upon the acquisition of the business by the so-called partnership it was continued without interruption and under the direction and management of the same individuals as before. Four of the 5 named individuals contributed their services actively and continuously to *86 the business of the so-called partnership. The fifth, Albert Hoersting, lived at Dayton, Ohio, and was able to give little of his time to the affairs of the business and the so-called partnership agreement provided that the 4 active partners should receive a larger distribution of profits than those distributable to the Hoersting Family Trust. This extra distribution was designated "Allocation A Distribution" and was computed as a percentage of sales made to certain designated firms. The balance of the income of the business after making this distribution was divided equally among the 5 "partners". In determining the deficiencies here in question the respondent increased the decedent's income for the year 1940 in the amount of $4,222.28, which represented Allocation A Distribution made by Cincinnati Stamping Company to decedent for the year 1940 and for the year 1941, increased that income in the amount of $6,600.17, a similar distribution. These distributions were determined by respondent to be salary received by decedent from the so-called partnership. Respondent, also, in determining the deficiencies, included in income of the decedent the balance of the income distributed by the *87 so-called partnership to decedent as trustee of the trust created August 1, 1940 by Erma C. Eger and the income received by the 4 trusts created by the decedent on February 1, 1937. Opinion The petitioner questions the property of respondent's action in taxing the estate of the decedent with the entire income of 4 trusts created by him on February 1, 1937, and also with the income of a trust created on August 1, 1940 by Erma C. Eger, wife of the decedent. In all the trusts the minor children of the settlors were named as beneficiaries. Since the trusts created by the decedent in 1937 and the trust created by his wife in 1940 vary somewhat in their provisions, they require separate treatment. The 4 trusts created by decedent were identical in form. The corpus of each trust consisted of 70 shares of the capital stock of The Cincinnati Stamping Company, an Ohio corporation. Each trust was declared to be irrevocable. No power was reserved to revoke, alter, or amend the instruments. No right to revest either the income or corpus in the decedent existed. The income was to be paid to each beneficiary until he reached the age of 21 years, at which time the corpus was to be paid over absolutely. *88 In the event of the death of a beneficiary before reaching the age of 21, the income was to be paid to the decedent's surviving children until each reached the age of 21 years, when the corpus was to be paid over to them absolutely. The decedent's wife, Erma C. Eger, was named trustee with broad powers of investment and management. These trusts, on their face, constitute absolute gifts of the trust corpus and the income therefrom. The respective beneficiaries being the beneficial owners of the property, the income is taxable to them. Blair v. Commissioner, 300 U.S. 5. The respondent in his deficiency notice based his determination wholly upon his construction of the trusts themselves as rendering the income therefrom taxable to decedent under sections 22 (a), 166 and 167 of the Code. At the hearing respondent did not change that position. He now argues on brief that there is no proof that the income from the trusts was not actually used for the support, maintenance and education of the minor beneficiaries, rendering the income taxable to the grantor under section 167 of the Internal Revenue Code. Helvering v. Sturart, 317 U.S. 154. The proof offered on behalf *89 of the decedent consisted of the introduction and reception in evidence of the trust instrument. No evidence was presented as to their administration by the trustee. In the present circumstances, was the mere introduction of the trust agreements sufficient to make a prima facie case in support of petitioner's assignment of error? We think it was. The trust instruments clearly show that decedent had completely and forever disposed of the corpus of the trusts and the income accuring therefrom. Decedent was not the trustee, and had no power or control over the corpus or income. He could receive no economic benefit therefrom, unless the trustee, in some manner, violated the terms of the trust agreements. The trustee was not called as a witness in petitioner's behalf or by the respondent. But we do not believe it was necessary under the circumstances to establish that the trust provisions had not been violated, at least where, as here, the contested determination did not rest upon such a violation. The rule is well established that in the absence of evidence to the contrary a trustee, having accepted the trust, is presumed to act in good faith in the administration of the trust and in *90 accordance with the power and authority vested in him. In re American Sav. Bank, 210 Iowa 568. 231 N.W. 311; Offenstein v. Gehner, 223 Mo. 318, 122 S.W. 715; Hawaiian Pineapple Co. v. Browne, 69 Mont. 140, 220 P. 1114. Cf. Genesee Wesleyan Seminary v. United States F. & G. Co., 247 N. Y. 52. 159 N.E. 720; United States Bank v. Dandridge, 12 Wheat. 64. In the present circumstances, we think the introduction of the trust agreements in evidence, fortified by the presumption that the trustee administered the trust lawfully and in accord with the provisions thereof, constituted a prima facie case for the petitioner, and overcomes the presumption of correctness on the part of the respondent. Washington Post Co., 10 B.T.A. 1077. No evidence was presented tending to rebut the prima facie case of petitioner. We conclude that the respondent erred in taxing the income of the 4 trusts created by the decedent in 1937, and petitioner is sustained on this issue. A part of the deficiencies determined by the respondent results from his taxing to the estate of the decedent the income from a trust *91 created on August 1, 1940 by decedent's wife, Erma C. Eger. Respondent contends, while the decedent was the trustee and not the settlor of the trust, the surrounding facts and circumstances clearly demonstrate that a mere reallocation of income among the economic family group was effected and the income was properly taxable to decedent under section 22 (a) of the Internal Revenue Code. Helvering v. Clifford, 309 U.S. 331. The corpus of this trust was $100. The trust was irrevocable with no power to alter or revest the settlor with the corpus or income. The trust was to continue until the 18th day of February, 1951. The income was to be paid to the minor children of the settlor and the decedent "as and when necessary * * * at the discretion of the Trustee". The trustee was to be compensated for his services as such trustee from the income of the trust, in the sum of $4,000 per year, which was to be a first charge upon the income. The trustee was given broad powers of investment, management and control with "full power * * * to enter into associations, partnerships, firms and other business ventures". These 2 provisions furnish a clue to the purposes and motive for the *92 creation of the particular trust under discussion. Concurrently and under date of August 1, 1940, the decedent, as trustee, invested the $100 corpus of the trust in a so-called partnership known as Cincinnati Stamping Company. It may be noted here that the instant case was heard concurrently with a tax proceeding involving the latter company (Docket No. 4620). The parties have stipulated that the record in that proceeding shall be available by reference for all evidentiary purposes in the instant case. The proof adduced in the Cincinnati Stamping Company case developed certain facts material to the issue here. These facts are set forth in "Findings of Fact" contained in our Memorandum Findings of Fact and Opinion in the Cincinnati Stamping Company case entered on July 25, 1945. These facts material here have been incorporated in our present findings of fact. Briefly summarized, they show that in 1940 the decedent, together with Ralph E. Grimme, Albert Hoersting, George A. Wimmer, and John G. Schroer, was an officer and director of that corporation; that the stock of that corporation was owned by these individuals and by family trusts of certain of these individuals; on August 1, 1940, the *93 above named individuals and Eleanor Sherman executed a contract designated "Partnership Agreement" for carrying on the business under the name of Cincinnati Stamping Company; the capital of the "partnership" was to $500be of which sum the trust created by decedent's wife contributed $100; the decedent, together with the other above mentioned individuals, caused the transfer of the assets and the business of the corporation to the so-called partnership, and thereafter the business was continued as theretofore. This trust of August 1, 1940, was without significance unless read in connection with the "partnership agreement" of even date. They must be read and construed as a single instrument. Rose Mary Hash, 4 T.C. 878. When so read and scrutinized in the light of the surrounding circumstances, we think, decedent, although not the settlor, had such economic control over the trust property and the source from which its income was to be realized as to render him taxable on the income of the trust under section 22 (a). Edward Mallinckrodt, Jr., 2 T.C. 1128; affd., 146 Fed. (2d) 1; cert. den., 324 U.S. 871, (Apr. 9, 1945); Edgar R. Stix, 4 T.C. 1140; *94 Helvering v. Clifford, supra.The respondent's contention with respect to this trust is sustained. It is agreed that there must be a recomputation of the deficiencies if it be held in a proceeding of Cincinnati Stamping Company, Docket No. 4620, that the alleged partnership constituted an association taxable as a corporation. In that event the amounts included by respondent as the distributive share of the trust as a so-called partner must be adjusted to reflect only the amount actually distributed as considered in the nature of a dividend. As we have held the so-called partnership, Cincinnati Stamping Company, in that proceeding to be an association, the adjustment in question will be made. Decision will be entered under Rule 50.